# WM. CECIL *vs.* THADDEUS CLARKE and others.

Letters testamentary or of administration are necessary for the transmission of title to a legatee, and on an issue of freedom *vel non.*, the *will* manumitting the negro is insufficient to establish the freedom, without the production of letters testamentary or of administration.

But in an action for malicious prosecution, in causing the plaintiff to be arrested on a charge of kidnapping the negroes, where the issue is whether the defendants acted falsely, maliciously, and without probable cause, the will manumitting the negroes may be admitted in evidence without the production of letters of administration.

In an action for malicious prosecution, in causing the plaintiff to be arrested on a charge of kidnapping negroes, declarations of one of the party who accompanied the plaintiff, and assisted in what was done, calculated to impress the defendants with the belief that the negroes were free, are admissible in evidence, whether made in or out of the hearing of the plaintiff.

But such declarations not communicated to the defendants until several days after the arrest and imprisonment of the plaintiff, are not admissible in evidence; the existence of probable cause cannot be shown by

establishing a fact proved not to have been communicated to the defendant.

Letters of administration on the estates to which the negroes were supposed to belong, procured by the plaintiff *after* the warrant for his arrest for kidnapping had been issued, are not admissible in evidence, as they could have no bearing on what was previously done by the defendants.

In an action for malicious prosecution, where the facts proven are too inconclusive to justify any rational mind in finding *malice* on the part of the defendants, the court may instruct the jury, when called on to do so, that there is no sufficient evidence to sustain the action.

In an action for malicious prosecution, it is incumbent on the plaintiff to show that the proceeding against him was instituted maliciously, *and* without probable cause; if it were malicious, but if there was probable cause, the action cannot be maintained.

In such actions, malice is for the jury, and it may be inferred from the want of probable cause, but want of probable cause must be proved by the plaintiff.

Probable cause for a criminal prosecution, is such conduct on the part of the accused as may induce the court to infer that the prosecution was undertaken from public motives.

APPEAL from the Circuit Court for Anne Arundel county.

*Action,* for malicious prosecution, brought on the 2nd of March 1858, by the appellant against the appellees, seven in number, in the circuit court for Howard county, and removed thence, on suggestion of the plaintiff, to the circuit court for Anne Arundel county, for trial. The pleadings are fully stated in the opinion of this court.

In the course of the trial, ten exceptions were taken by the plaintiff to the rulings of the court below, (BREWER, J.) Of these, the *first, third* and *fifth* were abandoned in argument in this court, and need not be stated. The purport of the evidence in the case is sufficiently given in the opinion of this court, and it is only necessary to state briefly the exceptions which were relied on in argument.

*2nd Exception.* The defendants offered in evidence the will of Samuel Owens, dated June 20th, 1820, and admitted to probate on the 3rd of October 1821, by which he bequeathed to his wife, Mercy Owens, his negro girl Rose, and appointed his said wife his executrix. To the admissibility of

this evidence the plaintiff objected, unless an administration upon the estate of said Samuel Owens was shown. The court overruled the objection, and permitted the will to be read to the jury, and to this ruling the plaintiff excepted.

*4th Exception.* The defendants then offered in evidence the will of Mercy Owens, dated the 26th of March 1831, and admitted to probate in August 1831, by which the testatrix bequeathed said negro Rose to her daughter, Tabitha Macbee, for seven years, after her decease, then said Rose to be free, and her children, born during her servitude, to be free when they respectively attain the age of twenty-one. To the admissibility of this will the plaintiff objected, unless an administration upon the estate of the said Mercy Owens was shown. The court overruled the objection, and allowed the will to be read to the jury, and to this ruling the plaintiff excepted.

*6th Exception.* The defendants proposed to prove, by a witness, certain remarks made by Richard Owens, when the plaintiff and his party were at Clarksville, (the said Richard being one of the party who accompanied and assisted the plaintiff in the arrest of the negroes,) out of the presence and hearing of the plaintiff, as to the ownership of the negroes mentioned in the evidence. The plaintiff objected, but the court overruled the objection, and permitted the testimony to be given to the jury as against the said Richard Owens, and to this ruling the plaintiff excepted.

*7th Exception.* The defendants then proved that said Richard Owens told witness, on the occasion in question, that the negroes mentioned in the evidence had been set free by Mercy Owens, the elder, but it had been recently discovered that she had no right to manumit them, and they wanted to reduce the blacks into slavery, but witness did not mention these remarks of Richard Owens to the defendants until several days after the arrest of the plaintiff. The plaintiff then, to show that the estates of Samuel Owens, Sen., and his wife, Mercy Owens, were unadministered upon until September 1857, offered in evidence duly certified letters of administration upon said estates, granted to him in September 1857. To the admissibility of this evidence the defendants objected,

and the court sustained the objection, and refused to permit these letters to be read to the jury, and to this ruling the plaintiff excepted.

*8th Exception.* The plaintiff offered in evidence two deeds, one from Samuel Owens, Sen., to Mercy Owens, Jr., dated Sept. 8th, 1808, by which the grantor conveyed to the grantee a certain tract of land, and all his personal property, including negroes, the other from Joseph Owens and others, to Samuel Owens, Jr., dated the 20th of February 1834, by which the grantors, as heirs at law of Mercy Owens, Jr., conveyed to the grantee their title to the said tract of land, reciting that the said Samuel Owens, Sen., after the aforesaid deed to his daughter, Mercy Owens, Jr., sold the land to his son, the said Samuel Owens, Jr. To the admissibility of these deeds the defendants objected, and the court refused to permit them to be read to the jury, and to this ruling the plaintiff excepted.

*9th Exception.* The plaintiff asked the court to instruct the jury, that to constitute probable cause for the prosecution stated in the evidence, the jury must be satisfied, from the evidence, that the facts relied upon as constituting such probable cause, were known to such of the defendants as the jury may believe, from the evidence, were concerned in causing the plaintiff to be arrested, and further, that the facts so known to the said defendants were sufficient to produce the suspicion that the plaintiff had violated the law, and ought to be arrested as a criminal. This instruction the court refused to give, and to this ruling the plaintiff excepted.

*10th Exception.* The defendant then asked the court to give the following instructions to the jury:—

*1st, 2nd, 3rd, 4th, 5th and 6th.* That there is no evidence before the jury sufficient, in point of law, to maintain the issues joined on the part of the plaintiff as against *six* of the defendants (all except Moore) respectively, and therefore the jury must find for the said defendants.

*7th.* That, if the jury find, from the evidence, that Rose and her children were free on the 6th of August 1857, and

that the plaintiff in this case knew that they were free, then he is not entitled to recover.

*8th, 9th, 10th, 11th, 12th and 13th.* That there is no evidence before the jury of a want of probable cause as against six of the defendants (all except Moore) respectively, for the alleged malicious prosecution in this case, and therefore the plaintiff is not entitled to recover as against the said defendants.

*14th.* That if the jury shall believe, from the evidence in this case, that the defendants were not actuated by any improper motives in doing the acts given in evidence against them, then the plaintiff is not entitled to recover. These prayers the court granted, and to this ruling the plaintiff excepted.

The verdict, under these instructions, was in favor of all the defendants except Moore, against whom the plaintiff recovered a verdict and judgment for $5000 damages, from which he appealed, and his appeal is still pending, and brings up the exceptions taken by the defendants. The present appeal is by the plaintiff, and brings up the exceptions above stated.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*John. P. Poe* and *Jas. S. Franklin,* for the appellant:

1st. The *second* and *fourth* exceptions present the same question, and that is, as we conceive, simply whether letters testamentary or of administration are necessary, in Maryland, for the transmission of title to a legatee. The point has recently been argued in this court, in the case of *Cecil vs. Negro Rose, et al., ante* 92, and we do not propose here to do more than to refer to that argument and the authorities there cited, the chief of which are, 9 *Gill,* 132, *Anderson vs. Garrett;* 8 *G. & J.,* 246, *Alexander vs. Stewart;* 3 *Bland,* 551, *Neale vs. Hagthrop;* 10 *Md. Rep.,* 75, *Wilson vs. Smith;* 7 *Gill,* 84, *Gibbons vs. Riley.*

2nd. The objection to the ruling in the *sixth* exception, is

simply that by it the plaintiff is sought to be affected by remarks made by Richard Owens, out of his presence and hearing. To admit such testimony, violates the plain rule of evidence, that no man ought to be bound by declarations of which he is not aware, which he did not authorize, and which he had no opportunity to assent to or contradict. If it be said the evidence was only intended to affect Richard Owens, the answer is, that he was not a party to the suit, nor were his conduct, motives or declarations the subject of inquiry. 33 *Maine*, 580, *Brainerd vs. Brackett.*

3rd. The object of the introduction of the letters of administration offered in the *seventh* exception, was to show that the negroes seized were not entitled to their freedom, there having been no administration on the estate of Samuel Owens, Sen., who bequeathed negro Rose, the mother of the others, to his widow, who, in her will, manumitted her after the term of seven years; and that, consequently, there was no probable cause for the arrest and prosecution by the defendants of the plaintiff, who, in broad day, was proceeding to reclaim what he averred to be his property.

4th. The deeds set out in the *eighth* exception ought to have been admitted, because they tended to corroborate the oral testimony with regard to the mode by which Samuel Owens, Sen., acquired Rose, and further tended to prove the grounds upon which the plaintiff claimed title to the negroes which had been gone into by the defendants.

5th. The *ninth* and *tenth* exceptions contain the prayers offered by the plaintiff and rejected by the court, and those of the defendants granted by the court. The main questions in the case are presented by these prayers, and the appellant insists:—

1st. That the law is correctly stated in the plaintiff's prayer, and it should, therefore, have been granted. The character of the act of arrest and prosecution must be determined by the motives of the defendants existing at the time of the act; its complexion cannot be changed by proof that the defendants *subsequently* discovered that the negroes sought to be seized were free, or had free papers. Subsequently acquired

65 * v.17

information cannot avail them in exculpation of their conduct towards the plaintiff at the time the acts were committed; and in support of this position and this prayer, we refer to 3 *Bing. N. C.*, 950, *Delegal vs. Highly;* 11 *Adol. & Ellis,* 483, *James vs. Phelps;* 5 *Watts & Sergt.,* 438, *Seibert vs. Price;* 4 *Iredell,* 398, *Swain vs. Stafford;* 2 *Greenlf's Ev.,* sec. 454; *Starkie on Ev.,* (*Last Ed.,*) side pages 782, 783, 784, and cases cited in notes thereto; 2 *Denio,* 617, *Foshay vs. Ferguson.*

2nd. Most of the prayers on the part of the appellees deny there was any evidence against any of the defendants except Moore. The general rule is, that "whenever testimony is so slight and inconclusive that no rational, well constructed mind can infer from it the fact which it is offered to establish, it is the duty of the court, when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved." 9 *Gill,* 334, *Clarke vs. Marriott.* Again: "It is a settled principle that the court will not instruct the jury that there is no evidence of a material fact, if there be any evidence whatever tending to prove it." 1 *Gill,* 127, *Whiteford vs. Burckmyer & Adams.* Again: "When an instruction asks a court of law to submit a question of fraud to the jury, if there is any evidence legally tending to prove the fraud, the prayer should be granted." 6 *Md. Rep.,* 235, *Mayor & C. C. of Balt. vs. Williams.* To the same effect are the cases 1 *H. & G.,* 107, *Morris vs. Brickley;* 12 *G. & J.,* 236, *Gray vs. Crook;* 8 *Md. Rep.,* 337, *Corner vs. Pendleton;* 9 *Md. Rep.,* 1, *Spring Garden Ins. Co. vs. Evans.* In view of the general rule thus laid down, the evidence in this case must be examined. The defence to the action is—1st. That these defendants were not concerned at all in the prosecution; 2nd. That they were concerned in it, but simply as a *posse comitatus,* in obedience to the call alleged to have been made upon them by the constable; and 3rd. Even if concerned in the arrest and prosecution, and not as a *posse comitatus,* they yet had probable cause for their conduct. Now a careful examination and analysis of the testimony in this record shows:

Cecil *vs.* Clarke, *et al.*

1st. A determination on the part of the defendants, *by force*, to resist the seizure of the slaves, which it was the design no less than the duty of the plaintiff to arrest, and to embarrass him at every step after he had recovered a portion of them, in spite of their efforts. 2nd. That the *posse comitatus* defence is wholly irreconcilable with the unsuccessful attempts to obtain an indictment for kidnapping against the plaintiff, from a grand jury of which one of the defendants was a member. 3rd. That there was no probable cause for their conduct. There was nothing like kidnapping in the conduct of the plaintiff; on the contrary, his movements were public and undisguised, and rebut all inference of improper designs.

3rd. The defendants' seventh prayer ought not to have been granted, because there was no sufficient evidence that Rose and her children were free, or that the plaintiff knew they were free.

4th. The fourteenth prayer ought also to have been refused. It was calculated to mislead the jury, from its vagueness. "Improper motives" is an indefinite expression, meaning different things, according to the views of different men, and depending upon different degrees of taste and sensibility. One might regard as perfectly proper an act which would shock another's feelings. Prayers should always be so framed as to preclude such uncertainty.

In support of our comments upon these prayers, we refer to 13 *Iredell*, 320, *Honeycut vs. Freeman;* 2 *Greenlf's Ev.,* sec. 449, 450, 452, 453, 455; 26 *Eng. Law & Eq. Rep.,* 410, *Stevens vs. Midland Counties Railway Co.;* 2 *Hurls. & Nor.,* (*Excheq. Rep.,*) 600, *Huntley vs. Simson;* 19 *Eng. C. L. Rep.,* 47, *Williams vs. Taylor;* 1 *Barn. & Adol* , 128, *Cotton vs. James;* 1 *Amer. Lead. Cases,* 208, 209, 213, 215; 10 *Eng. C. L. Rep.,* 269, *Nicholson vs. Coghill;* 13 *Maine,* 439, *Merriam vs. Mitchell.*

*Thos. Donaldson,* for the appellees:

1st. The evidence in the *second* and *fourth* exceptions was properly admitted. It had been proved that Rose was the property of Samuel Owens at the time of his death; by his

Cecil *vs.* Clarke, *et al.*

will be bequeathed her to his wife, Mercy Owens, who was his sole executrix. By the will of Mercy Owens, Rose was bequeathed to Tabitha Macbee, for seven years, and after that time to be free. Creditors of Samuel Owens alone could controvert the title of Mercy Owens to Rose, under the will of Samuel Owens, and after such a lapse of time, all creditors, if any there had been, are presumed to have been satisfied. The representatives of Samuel Owens cannot interfere. Besides, Mercy Owens, for ten years after her husband's death, held Rose, claiming title to her, and, by her will, she rightfully disposed of her as her own. Tabitha Macbee held Rose under the will of Mercy Owens for seven years, and under the same will Rose took her freedom, after the expiration of the seven years' service. The negro's freedom, in such a case, takes effect by force of the will itself, and not through any act of an executor or administrator. As regards the representatives of a testator, a slave manumitted by the will is not assets; and as against creditors, the estate is presumed solvent in favor of the claim of freedom. 7 *Md. Rep.*, 453, *Tongue vs. Negroes Crissy, et al.* 8 *Md. Rep.*, 381, *Negro Rozier vs. Holliday.* 1 *Md. Ch. Dec.*, 296, *Thomas vs. Wood.*

2nd. The declarations of Richard Owens, in the *sixth* exception were admitted as against himself only, and could not in any way affect the plaintiff, and the ruling of the court in this exception, whether right or wrong, was of no consequence whatever. But, in fact, Richard Owens was one of the plaintiff's party, and, at the time of the declarations, engaged in taking up the negroes, so that his declarations might even have been admitted against the plaintiff himself.

3rd. The letters of administration offered in the *seventh* exception were taken out *after* the transactions complained of in this action had taken place, and were, of course, irrelevant to the questions at issue in the case. They could not affect the *previous* conduct of the defendants for which this action was brought.

4th. The deeds offered in evidence in the *eighth* exception were both utterly irrelevant, and were properly excluded.

5th. The plaintiff's prayer in the *ninth* exception could not be granted, because it threw upon the defendants the burden of showing probable cause for the prosecution; whereas it is well established, that in actions for malicious prosecutions the burden is on the plaintiff to show want of probable cause, and further, because the question of probable cause, and of the sufficiency of the proof of the want of probable cause, was by this prayer improperly submitted to the jury. Besides, the knowledge of the defendants of the facts constituting probable cause, was not necessary. 1 *Amer. Lead. Cases,* 211 to 223. 1 *Term Rep.,* 510, *Johnstone vs. Sutton.* 2 *Barn. & Adol ,* 184, *Blachford vs. Dod.* 42 *Eng. C. L. Rep.,* 622, *Patton vs. Williams.* 3 *Wash. C. C. Rep.,* 31, *Munns vs. Dupont.*

6th. The prayers on the part of the appellees, exculpating all of the defendants except Moore, were properly granted. The question of the sufficiency of the evidence to sustain the issues, was properly one for the determination of the court. 3 *Md. Rep.,* 258, *Nailor vs. Bowie.* The want of probable cause is also a question for the court, where the facts are undisputed, as in this case. An examination of the evidence with regard to these defendants, severally, will show that the decision of the court below on these prayers was correct.

7th. The defendants' seventh prayer was properly granted. There was sufficient evidence in the case to show that Rose and her children were free, and there was evidence showing that the plaintiff knew the fact.

8th. The fourteenth prayer was also properly granted. It was framed with express reference to the decision in *Turner vs. Walker,* 3 *G. & J.,* 384, where the same expression, "improper motives," is used, and to the opinion of Tindal, J., in *Stockley vs. Hornidge,* 8 *Carr. & Payne,* 11.

9th. But even if the court erred in any of the rulings excepted to by the plaintiff, there can be no reversal of the judgment, if its ruling on the prayers exculpating all these defendants except Moore was right. So the refusal to grant the 7th and 14th prayers could have had no effect as regards

these defendants, because the other prayers, if properly grant-ed, took the whole case from the jury.

LE GRAND, C. J., delivered the opinion of this court.

This is an action for *malicious* prosecution, instituted by the appellant against the appellees. The *narr.* alleges that the defendants, on the 7th day of August 1857, falsely, ma-liciously, and without probable cause, caused a warrant against the plaintiff and others to be issued by Samuel Nichols, a justice of the peace in Howard county, under and by virtue of which warrant the plaintiff was arrested and imprisoned in the jail of Howard county, until he was re-leased and discharged by a justice of the peace, and that the said complaint and prosecution are wholly ended and deter-mined before the commencement of this action.

The defendants pleaded severally, and each traversing the averments of the *narr.*

Among the undisputed facts of the case are the following: On the 6th of August 1857, in open day, the plaintiff, ac-companied by others, went to the house of Caleb Stabler, in Montgomery county, and arrested five negroes; a negro wo-man named Rose, and her four children, claiming them as the slaves of Mercy Owens, on whose estate he had, a short time previously, obtained letters of administration; that after having obtained possession of the negroes, he and his friends drove to the house of John R. Moore, one of the defendants, in Howard county, where it was said there lived two other children of Rose, Adriel and Mary, whom he also claimed and designed to seize. On his arrival there, plaintiff was told by Moore that these two negroes, having learned that the plaintiff was in search of them, had gone over to Upton Dorsey's, his friends in the meantime driving to Clarksville, with the negroes taken in Montgomery county. Their ar-rival and presence in Clarksville created considerable excite-ment there. On the plaintiff's arrival at Clarksville, after an unsuccessful search for Adriel and Mary, at Upton Dor-sey's, the defendant, Thaddeus Clarke, demanded to see his authority, which was exhibited in the shape of the letters of

Cecil *vs.* Clarke, *et al.*

administration on Mercy Owens' estate. William Welling and others said they were no authority to plaintiff to seize negroes, and Welling further remarked, that plaintiff could not be arrested without some one making an oath. John R. Moore replied, that he would make the oath. The plaintiff was then permitted to depart. The next day Moore went before justice Nichols and made an oath, and a warrant was issued. On the 11th of August 1857, the plaintiff was arrested and committed to jail, where he remained until the 13th of the month, when he was released on bail by justice Allen. The records of Howard county show no recognizance in plaintiff's case, and no entry of any presentment or indictment against him. It was shown, during the progress of the case, that three of the defendants went before the grand jury of Howard county, and there testified against the plaintiff. The judgment below was in favor of all the defendants but Moore, against whom there was a judgment, from which he appealed.

The plaintiff, to sustain the issue on his part, gave in evidence letters of administration granted to him by the orphans court of Prince George's county, on the estate of Mercy Owens, dated the 13th of July 1857, and, in addition to the facts already stated, others, which will be noticed hereafter.

The point decided by the circuit court, and embraced in the plaintiff's first exception, has been abandoned in this court.

The defendants, to support the issue on their part, proved by a witness that he lives in Prince George's county; that he knew Mercy Owens, Jr., and that she died in 1809; that he knew the negro woman Rose, who was, at the time of the trial, about 48 years old; that her two children, Adriel and Mary, belonged to J. Owens, and came into his possession in 1831, and remained with him until they went free, in 1852 or 1853; that Mercy Owens, Jr., never owned any slaves except two men; that Rose left the neighborhood of witness before she went free; she went to James Clark's in 1833, and was his slave for not less than five years. Samuel Owens, Jr., brought her into the neighborhood of witness in 1817;

he acquired her through his wife; she was sold in 1818, to his father, Samuel Owens, Sr., who had possession of Rose as his slave until his death, and after his death, his widow, Mrs. Mercy Owens, until her death, in 1831, held Rose as her slave, and after the death of Mrs. Owens, she went into the possession of Tabitha Macbee, as her slave, and so remained for about 18 months, when she went into the possession of James Clarke. That while Rose was in the possession of Mrs. Mercy Owens, she had two children, Adriel and Mary, and immediately after the death of Mrs. Mercy Owens, they went into possession of Samuel Owens, Jr., and never went at large until 1852 or 1853. After this testimony, the defendants offered in evidence the will of Samuel Owens, dated June 20th, 1820, and proved October 3rd, 1821, "to the admissibility of which evidence the plaintiff's counsel objected, unless an administration on said estate was shown, but the court overruled the objection, and permitted said will to be read to the jury, to which ruling the plaintiff excepted." This constitutes the *second* exception. The *fourth* exception presents the same question as the second. The testimony excepted to in the *fourth* exception was the will of Mrs. Mercy Owens, widow of Samuel Owens, Sr., and executrix under his will. By the will of Samuel Owens, Sr., the negro woman Rose was bequeathed to his wife, Mercy, and by the will of the latter, she bequeathed to her daughter, Mrs. Macbee, the woman for seven years, after which she was to go free, and declared that her children, born during such servitude, should be set free when they reached twenty-one years of age.

We think the authorities cited on behalf of the appellant, are sufficient to show, that in this State at least, letters testamentary or of administration are necessary for the transmission of title to a legatee; and if the question to be determined in this case was the freedom of the negroes captured by the plaintiff, we would have no difficulty in deciding that the wills of Mr. and Mrs. Owens would be insufficient, of themselves, to establish it; in such a case letters would have to be shown. But the question here is, not slavery or freedom, but

Cecil *vs.* Clarke, *et al.*

whether the defendants, in doing what is charged against them, acted *falsely, maliciously, and without probable cause?* If they did not, then they are not liable for damages. The defendants having given, *without objection*, evidence of the history of Rose, and of two of her children, we think the testimony excepted to in the second and fourth exceptions was properly admitted. The jury might very fairly infer that in the neighborhood of the residence of the negroes in question, it was generally believed that they had been manumitted by the wills of their former owners, and although administration on the estates of their owners was necessary, *in law*, to transmit title until such time as they would be entitled to their freedom, yet by no means does it follow from this that a person acting in good faith and interposing to prevent what he considers a great wrong to the defenceless, will be held, nevertheless, responsible in damages, if it should turn out that the persons in whose behalf he interfered were slaves. The mere fact that negroes were the subject of dispute, does not alter the character of the action, or the character of the proof necessary to sustain it. Had the plaintiff been arrested for the larceny of a horse, the same principles would apply as do to this case. In such a case it might appear that his title was clear beyond all successful cavil, yet that fact alone, in opposition to all others which might exist, would not be sufficient to enable the plaintiff to recover. It might be shown that the defendant acted honestly and without malice, and if so, he would be entitled to the verdict. And, although the right of property is an important ingredient in all such cases, the true inquiry involved is, was the conduct of the defendant malicious, and without probable cause? In its very nature it concedes that the plaintiff had the right to take the property, but that there were circumstances connected with his doing so, and with the history of the property, which made his conduct suspicious, and justified the inference that he was acting illegally.

The *third* and *fifth* exceptions have been abandoned.

We think the court properly allowed the declarations of Richard Owens to be given in evidence. He was one of the

66    v.17

party who accompanied and assisted the plaintiff in the arrest of the negroes; and if he said anything whilst engaged in that business calculated to impress those who heard him with the belief that the negroes were free, certainly it constitutes a part of the evidence on which the defendants acted. It should not be forgotten that the inquiry here is not whether the negroes were slaves, or whether the plaintiff had not the right to arrest them, but whether, under the circumstances, the defendants acted without probable cause, and maliciously; entirely different questions. To our minds, there could not be stronger evidence than the declarations of one of the parties assisting in what was, at the time, believed an illegal act, whether within or without the hearing of the principal. It bears directly on the question of probable cause and want of malice. But, in point of fact, the testimony was only *allowed against himself*, and as his rights were in no way involved in the case, it had no effect whatever.

We do not think, however, that the court would have been justified in allowing the evidence of the witness as stated in the *seventh* exception. But there was no exception taken to *it*. The testimony shows that the witness did not, until some days after the arrest and commitment of the plaintiff, communicate to any of them what had been said by Owens. Now, although it is for the plaintiff to make out a *want* of probable cause, yet the existence of it cannot be shown by establishing a fact which is shown not to have been communicated to the defendants. 2 *Greenlf. on Ev.*, sec. 454. We make these remarks in regard to the proof, to guard against misapprehension.

We think the court properly rejected the documentary evidence contained in the 7th and 8th exceptions. That contained in the 8th, had no bearing on the case whatever, and that contained in the 7th, was of acts of the plaintiff done after his visit to Howard county, and the issue of the warrant for his arrest, and of course could have no bearing on what was done by others at a previous day.

The ninth and tenth exceptions of the plaintiff relate to the ruling of the court on the prayers offered respectively by plaintiff and defendants.

Cecil *vs.* Clarke, *et al.*

Before proceeding to notice the law which we understand as controlling cases of this character, we will state that we think the learned judge below was clearly right in deciding that there was no sufficient evidence against such of the defendants as to whom he did so decide. Without recapitulating it in detail, it may be summed up thus:—The plaintiff, accompanied by friends, arrives in a village which has been alarmed by the report of and flight of negroes to it for protection. He has in his charge and under his care certain negroes whom he has brought from an adjoining county, and is in pursuit of others well known in the village. He finds, on his arrival, a number of persons standing around, gossiping, it being a place of great resort. His right to the negroes is denied by one of these persons, and he is asked for his authority, which he exhibits. The testimony is, that he was permitted to depart, although he failed to convince the bystanders that he had the right to take with him the negroes. It was then said by one of the defendants, Welling, that he could not be arrested unless some one would make an oath, whereupon Moore volunteered to do so. It does not appear from any part of the evidence that the meeting of the defendants was by concert, or that its motive had anything whatever to do with the arrival of the plaintiff or the negroes; for aught that appears, it seems to have been purely accidental. None of these parties did anything violent, except one, who, according to the testimony, did not know what he was doing, being under the influence of liquor. When the warrant for the arrest of the plaintiff was issued, the defendants refused to assist in its execution, and were only prevailed on to do so by being threatened by the constable with being presented to the grand jury, if they refused. Surely there is nothing in all this unusual or malicious. That such an arrival in a small village would create some agitation, was to have been expected; and we see nothing in the conduct of the defendants to whom we have alluded, which is deserving of censure. Their conduct was both natural and humane. There is no evidence that there was any conspiracy whatever among them; all that was said and done on the occasion, was

Cecil *vs.* Clarke, *et al.*

clearly from the impulse of the moment, and from a commendable impulse, to see that helpless beings were not illegally and forcibly carried out of their county. They would have been less than men, had they not exhibited some emotion on the occasion. In our judgment, they did nothing but what they had a right to do—they made inquiries and expressed their opinions in regard to the rights of the negroes, and nothing more. Of course these remarks do not apply to the defendant, Moore; the judgment being against him, his case will be separately considered on his appeal.

In actions of this kind, it is incumbent on the plaintiff to show that the proceeding against him was instituted maliciously and without probable cause. If it were malicious, but if there was probable cause, the action cannot be maintained. Malice is for the jury; it may be inferred from the want of probable cause; but want of probable cause must be proved by the plaintiff. "Probable cause for a criminal prosecution, is understood to be such conduct on the part of the accused as may induce the court to infer that the prosecution was undertaken from public motives." 2 *Greenlf. on Ev.*, sec. 454.

It is not necessary to consider the application of these principles on this appeal, *because* we concur with the court below, that the *facts* themselves were too inconclusive to justify any rational mind in finding malice on the part of the appellees, and without malice the action could not be maintained. There was nothing in the case from which it could be inferred, and it was the duty of the court to say so, which, in effect, the court did. This view of the case dispenses with all necessity of an inquiry into the ruling of the court on the other prayers, for if there was no sufficient evidence to sustain the action, those prayers, so far as this case is concerned, were but mere abstractions.

*Judgment affirmed.*

(Decided Oct. 29th, 1861.)