JOSEPH E. BOYD *vs.* TRUEMAN CROSS.

*Malicious Prosecution—Malice—Absence of Probable cause—Definition of Probable cause.*

To support an action for malicious prosecution, the plaintiff must prove affirmatively that he was prosecuted, or that a prosecution was instigated by the defendant; that it terminated in his discharge or exoneration from the accusation against him; and that it was both malicious and without probable cause on the part of the defendant.

Malice is a question of fact for the jury, and its existence may be, and most generally is inferred from the want of probable cause for the prosecution; but the absence of probable cause is not conclusive of the presence of malice. The presumption of malice, resulting from the want of probable cause, is only *prima facie*, and may be rebutted by the circumstances under which the defendant acted. But from the most express malice, the want of probable cause cannot be implied.

The want of probable cause is a mixed question of law and fact. As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case is a question of law for the Court.

Probable cause, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing that the accused was guilty.

APPEAL from the Circuit Court for Baltimore County.

Sometime in November, 1868, the appellant appeared at the counter of the Commercial and Farmers' National Bank in Baltimore city, and presented a check on said bank, purporting to have been drawn by Cox & Brown, commission merchants in said city. The teller of the bank to whom the check was handed, noticing that the amount called for in the body of the check, was different from the amount indicated by figures, remarked that there was something wrong about it; to this the appellant responded, yes, he thought so too—that he wanted information about it, and thereupon handed to the teller a letter addressed to himself, in which the check had been enclosed, and which he alleged he had received that

morning through the mail. The teller then presented the letter and check to the appellee, the cashier of the bank, remarking that he thought it a case of forgery as Cox & Brown had no account in the bank. The appellee came out of his room and requested a director of the bank to procure a police officer. An officer was brought in immediately, who after conversing with the appellant and appellee, took the former into custody and carried him to the counting room of Cox & Brown, where the check was pronounced a forgery, and a member of the firm stated that he had known the appellant for eight or nine years, and had always found him a very correct man, and was satisfied that he had nothing to do with the forgery of the check—that some one was trying to play a trick on him. The officer returned to the bank with the appellant, and reported to the appellee what had thus been said. Shortly thereafter the officer took the appellant to the Station House, where he was charged with attempting to pass a check upon the Commercial and Farmers' National Bank, knowing the same to have been a forgery. He was detained at the Station House until the next morning, when he was committed to jail, whence after a brief detention, he was released on bail; and was finally discharged by order of the Grand Jury, in February, 1869, the real forger in the meantime having been convicted upon confession.

In March, following, the appellant instituted an action for malicious prosecution and false imprisonment, in Baltimore City Court, against the appellee and the Commercial and Famers' National Bank. The defendants pleaded the general issue. The case was removed upon the suggestion and affidavit of the plaintiff to the Circuit Court for Baltimore County, where it was tried as for malicious prosecution alone. During the trial the plaintiff admitted that the evidence offered by him was not sufficient to establish a case against the bank, and the jury rendered a verdict for the other defendant, and judgment was entered thereon. The plaintiff appealed.

Boyd *vs.* Cross.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*John Henry Keene, Jr.*, for the appellant.

*C. B. Slingluff* and *John P. Poe*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action instituted by the appellant against the appellee and the Commercial and Farmers' National Bank, for malicious prosecution and false imprisonment; the case being tried as for malicious prosecution alone.

All the prayers on the part of the defendants, except the 7th and 8th, were conceded by the plaintiff. He also conceded that the evidence offered by him failed to make any case against the bank; and the Court, by granting the 8th prayer of the defendants, instructed the jury that there was no evidence of malice or want of probable cause as against either of the defendants, for the alleged malicious prosecution, and that, therefore, the plaintiff was not entitled to recover; and as this Court fully concurs in the correctness of that instruction, it becomes unnecessary to examine the questions raised by other prayers, whether offered by plaintiff or defendants.

To have entitled the plaintiff to recover for malicious prosecution, it was incumbent upon him to prove affirmatively, that he had been prosecuted, or that a prosecution had been instigated, by the defendants, or one of them; that such prosecution had terminated in his discharge or exoneration from the accusation against him; and that such prosecution was both malicious and without probable cause on the part of the defendants. All of these propositions must concur, and be established by the plaintiff, to entitle him to maintain his action. If the evidence adduced be legally insufficient to be submitted to the jury to prove each and all of these elements of the plaintiff's case, his action could well be pronounced groundless, and the defendant not be called on for his defence.

*Turner vs. Walker*, 3 *G. & J.*, 377; *Cecil vs. Clarke*, 17 *Md.*, 508; *Williams vs. Taylor*, 6 *Bing.*, 183; *Wheeler vs. Nesbitt*, 24 *How.*, 544.

Malice is a question of fact for the jury, and its existence may be and most generally is inferred from the want of probable cause for the prosecution; but it does not necessarily follow that because there is an absence of probable cause, the defendant must have been actuated by malice. The presumption of malice, resulting from the want of probable cause, is only *prima facie*, and may be rebutted by the circumstances under which the defendant acted. But from the most express malice, the want of probable cause cannot be implied.

The want of probable cause is a mixed question of law and fact. As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law for the Court. The jury, in our practice, are always instructed hypothetically as to what constitutes probable cause, or the want of it, leaving to them to find the facts embraced in the hypothesis.

What will amount to such combination of malice and want of probable cause, as will entitle a party to maintain an action, says Chief Justice TINDALL, (*Williams vs. Taylor*, 6 *Bing.*, 183,) is so much a matter of fact in each individual case, as to render it impossible to lay down any general rule on the subject; but there ought to be enough to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Perhaps the most accurate definition of probable cause is that given by Judge Washington, in *Munns vs. Dupont*, 3 *Wash. C. C. Rep.*, 31, as being such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty.

In this case, however innocent the plaintiff may have been of any intention to defraud either the bank or the parties

whose names were forged, the presentation of the check, under all the circumstances, was well calculated to excite suspicion. The plaintiff was a stranger at the bank; and the bank was not the proper place to obtain information in regard to the genuineness of the check, or, if genuine, the circumstances under which it was drawn. The house of the firm whose name was forged, was but a short distance off, and was well known to the plaintiff; and it very naturally struck the bank officers as strange that the plaintiff did not apply there for information instead of presenting the check at the bank. The officers might well suspect that it was an experiment upon the bank; and the production of the letter, in which the check had been enclosed to the plaintiff, was most likely regarded by the officers simply as a cunning device to meet the contingency of detection of the forgery, inasmuch as it was not first placed in the hands of the teller to whom the check was handed. The defendant, Cross, as the cashier of the bank, was certainly justified in sending the plaintiff, in the custody of the police officer, to the house of the firm by whom the check purported to be drawn, that he might be confronted by those parties, and that their statement could be heard in regard to the matter. They at once pronounced the check a forgery, and the plaintiff was then in the predicament of a party found holding a forged check which he admitted he did not receive in the course of business, and of the party from whom he received it he could give no account whatever. In this state of things, however unfortunate for the plaintiff, it was clearly incumbent upon him to furnish satisfactory explanation of all the circumstances creating suspicion, and he could not complain if his own mere statement, after the check was pronounced a forgery, was not taken and acted on as in all respects true. He was detained in custody of the police officer, and upon hearing before a magistrate he was held to answer the charge before the grand jury; and it was not until after the real forger had confessed and was convicted, that the plaintiff was finally discharged. Cross, the defendant, did not

pursue the prosecution further than to place the matter in the hands of the officers of the law.  He never appeared as a witness, either before the magistrate or the grand jury.  He appears to have been content to leave the plaintiff to the disposition of the law, without any agency of his to sustain the prosecution.  In his conduct we can perceive no evidence of malice whatever.  Nor can we discover in all the facts of the case evidence of the want of probable cause.  On the contrary, we think any reasonable man, acting in the capacity of the defendant Cross, and looking as well to the protection of the bank as to the good of the public, would likely have done as the defendant in this case did.

"In the trial of actions of this nature," said Judge WASHINGTON, in the case before referred to, "it is of infinite consequence to mark with precision, the line to which the law will justify the defendant in going, and will punish him if he goes beyond it.  On the one hand, public justice and public security require that offenders against the law should be brought to trial, and to punishment, if their guilt be established.  Courts and juries, and the law officers, whose duty it is to conduct the prosecution of public offenders, must in most instances, if not in all, proceed upon the information of individuals; and if these actions are too much encouraged—if the informer acts upon his own responsibility, and is bound to make good his charge at all events, under the penalty of responding in damages to the accused, few will be found bold enough, at so great a risk, to endeavor to promote the public good.  The informer can seldom have a full view of the whole ground, and must expect to be frequently disappointed, by evidence which the accused only can furnish.  Even if he be possessed of the whole evidence, he may err in judgment; and in many instances a jury may acquit, where to his mind the proofs of guilt were complete."  These observations apply to this, as they do to most of the cases of this character.  While the plaintiff may have been entirely innocent of any improper intention in regard to the check, the circumstances surround-

ing him were unfortunate, and were well calculated to create suspicion in the minds of those to whom he was a stranger. Investigation was certainly proper, and the placing the plaintiff in the hands of the officers of the law was the only course by which full investigation was likely to be had. And if the circumstances of the case in *Cecil vs. Clarke,* 17 *Md.,* 508, were not legally sufficient to be submitted to the jury to prove malice, we entirely fail to discover the evidence of malice, or the want of probable cause in this case.

In closing this opinion, we cannot forbear expressing our entire disapproval of the very loose and imperfect manner in which the bill of exception appears to have been prepared in this case. Instead of incorporating the evidence, or such parts of it as were deemed material to the questions raised by the prayers, in an orderly and intelligible manner, the mere loose, disconnected notes of the evidence, taken by counsel in the course of the trial, were inserted without revision, and without the least reference to order, clearness or brevity. This is a mode of preparing a bill of exception that is not to be tolerated. If cases are of sufficient importance to be brought here for review, it is certainly not too much to exact of counsel that they take proper care in preparing the exceptions. We must express the hope that the Judges in the circuits will strictly enforce the fifth rule for the regulation of appeals, in regard to the manner in which bills of exception shall be prepared. The judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 15th February, 1872.)

NOTE.—The counsel for the appellee request the Reporter to state that the bill of exception in the aforegoing case was not submitted to them before it was signed and sealed by Associate Judge YELLOTT of the Court below, and that they had no knowledge of it whatever until they found the case on the Docket in this Court.