JEREMIAH K. ROSS, PLAINTIFF IN ERROR, v. CYRUS LANGWORTHY, DEFENDANT IN ERROR.

**Malicious Prosecution:** EVIDENCE. In an action for malicious prosecution, where the testimony shows that the object of the criminal proceedings was not to vindicate the law and punish crime, but to coerce the payment of a debt, a malicious motive may be inferred.

ERROR to the district court for York county.    Tried below before POST, J.

*George B. France,* for plaintiff in error.

*W. T. Scott* and *M. C. Frank,* for defendant in error.

MAXWELL, J.

This is an action for malicious prosecution. On the trial of the cause in the court below a verdict was returned in favor of the defendant, upon which judgment was rendered. The principal error relied upon is that the verdict is not sustained by the evidence.

It appears from the testimony that in the winter of 1877-8 the plaintiff purchased or traded for a pair of horses from one Forster, the horses being valued at $260. The plaintiff, in payment of said horses, delivered to Forster a yoke of oxen valued at $120, and to secure the remainder executed a chattel mortgage upon the horses, due in October, 1878. Before this mortgage became due the plaintiff purchased a

wagon of an implement firm in Central City, for the sum of $80, due in one year, and to secure the payment of the same executed a chattel mortgage upon the horses and wagon. Just before the time that Forster's mortgage became due the plaintiff applied to the defendant for a loan of $100, to pay the Forster mortgage. After various conversations with the defendant in regard to the matter the plaintiff procured a loan of $100 for sixty days, with which he immediately satisfied the Forster mortgage; and to secure the payment of the loan from the defendant the plaintiff executed a chattel mortgage upon the horses above referred to. A suggestive circumstance in connection with this mortgage, in view of the claim of the defendant, is the fact that the words, "the above described chattels are now in my possession, are owned by me and free from all incumbrances in all respects," were stricken out. These words are on one line in the printed form of the mortgage and a pen has been run across them to erase them. The mortgage was not paid when it became due, and the time was extended thirty days, the plaintiff paying $3 interest. The plaintiff appears to have been making every effort possible to a man of limited means to pay the debt, and if his own testimony is to be credited, would have succeeded in a short time. About this time the plaintiff wrote to the defendant as follows:

" Mr. Langworthy:

"I have been trying for the the past two weeks to get the money for you and got disappointed all round. I can't get it no place. I have done all that I could do and can't do any more. Veerig and Wilder, at Central City, have closed in on me now, but would not have done it if you had waited on me. They said that if you was agoing to take the team from me they would come it first. Now if we can compromise and you give me a chance I will pay you as quick as I can. I would have come down to-day and seen you about it myself. I am going to mill to-mor-

row and could not get back in time to go if I went to town. Let me know the best you can do with me. I can make the first mortgage all right if you would give me a chance, and keep my team; and if you don't give me a chance I can't, that is all there is about it. I have been running around so much that I am sick and discouraged.

"Answer and let me know.
            "(Signed.)                    J. K. Ross."
And in reply the following:

"York County Bank,
            "Edward Bates Attorney,
                    "YORK, Nebraska, Feb. 4, 1879.
"J. K. Ross:

"*Dear Sir*—You can make my note all right by paying me the money or giving me extra security that is clear for the amount, and if you don't make the matter good I shall have to deal according to law with you, and under the circumstances on which you obtained the money it will place you in a bad place. I will give you until February 8 to make the matter good, and I want you for your own interest to attend to it. Yours,
            "(Signed.)                    C. LANGWORTHY."

On the tenth day of February, 1879, the defendant caused the plaintiff's arrest and imprisonment, upon the ground " that the crime of obtaining money under false pretenses has been committed in the county of York, and that J. K. Ross committed the same." The plaintiff was thereupon arrested and imprisoned for twenty-six days. The alleged false pretenses are said to consist in the representation that the property was free from incumbrances. That is, that plaintiff represented to the defendant at the time he borrowed the money that the property was free from incumbrances as an inducement to loan the money upon the security. This the plaintiff denies, and further states that he informed Langworthy of the mortgage, and Langworthy then asked him what the horses were worth, and he informed

him $250, and he said that was sufficient. And this is not denied. And we think it is pretty clear from all the testimony that the plaintiff did not conceal the execution of the chattel mortgage for the wagon. It is very clear, too, from the testimony of the defendant himself, that this imprisonment was a mere means of collecting a debt. On cross examination Langworthy testified as follows:

Q. What started you up to swear out a warrant just at that time?

A. A man would be naturally started; because I saw the property was going, and I had to protect myself.

Q. Where was the property going?

A. Going to be sold under this mortgage.

Q. And this is what started you up to make this first complaint?

A. Yes, sir.

Q. That is all that started you to make this first complaint?

A. Yes, sir.

Q. You had no other reason nor motive but that?

A. No, sir.

Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused was guilty. *Boyd v. Cross*, 35 Md., 197. *Cooper v. Utterback*, 37 Id., 282. The question of probable cause is one of law and fact composing two distinct inquiries. The one, for the jury to say what facts are proved, and it is for the court to say whether those facts constitute probable cause. *Turner v. O'Brien*, 5 Neb., 547–8. *Johns. v. Marsh*, 9 Rep., 143. *Boyd v. Cross*, 35 Md., 194. Probable cause does not depend upon mere belief, however sincerely entertained. Because if that were so, any citizen would be liable to arrest and imprisonment without redress, whenever any person, prompted by malice, saw fit to swear that he believed the accused was guilty of the offense charged.

The law, therefore, has imposed an additional ground, viz., such knowledge of facts as would induce a reasonable man to believe that the accused was guilty. Nothing short of this will justify the institution of a criminal charge against another. Cooley on Torts, 182. The defendant's own testimony shows very clearly that the object he had in causing the plaintiff's imprisonment was to aid him in collecting his debt and not to vindicate public justice. The rule of law is, that a prosecution instituted for any other purpose than that of bringing the party to justice shows a malicious motive. *Johns. v. Marsh,* 9 Rep., 143. *Mitchell v. Jenkins,* 5 B. & Ad., 594. The reason is, the prosecution was not instituted to vindicate the law and punish crime, but as a means of coercing the accused to comply with the wishes of the prosecutor.

The court also erred in excluding the deposition of Forster. There is testimony tending to show that the attorney who prepared the mortgage in question was acting for the bank as its attorney, and that he wrote the mortgage in question at the request of the cashier. Forster's testimony shows that the plaintiff informed this attorney of the existence of the mortgage of $80 before the mortgage was drawn or the money paid. This was material testimony to which the plaintiff was entitled.

The court also erred in excluding the deposition of Edgeworth, the attorney, showing that he had been employed by the bank to draw the mortgage in question.

Some reliance is placed by the defendant on the advice of counsel, but we think it is not sufficient for two reasons: *First,* There does not appear to have been a full statement of all the facts to such counsel; and, *Second,* It is pretty clear that the defendant knew at that time that there was no intent to defraud. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.