## CHARLIE MOTSINGER v. SAMUEL A. SINK.

### (Filed 7 April, 1915.)

**1. Malicious Prosecution—Without Cause—Compensatory Damages—Particular Malice—Punitive Damages.**

Compensatory damages may be recovered in an action for malicious prosecution when the criminal case had knowingly and intentionally been brought by the defendant in the civil action, without legal cause or excuse; but for the recovery of punitive, exemplary, or vindictive damages it must be shown that the defendant had been actuated by particular or actual malice, committing the act complained of willfully, maliciously, or wantonly or that he did so as the result of a reckless indifference to the rights of others.

**2. Malicious Prosecution—Probable Cause—Presumptions—Malice.**

To recover punitive damages in an action for malicious prosecution, malice and a want of probable cause must be shown; and malice may be inferred from a want of probable cause, though a want of probable cause may not be inferred from malice alone.

**3. Malicious Prosecution—Probable Cause—Knowledge of Prosecutor—Reasonable Belief.**

In an action to recover damages for malicious prosecution, the want of probable cause for the criminal action must be shown from those facts and circumstances which were known to the prosecutor at the time, and if they afforded such grounds for starting the prosecution as a reasonable man under the circumstances would have acted upon, he would not be liable for damages in the civil action, though he had been inspired by malice and the defendant in the criminal action had been proven to 'have been innocent of the offense charged.

**4. Malicious Prosecution—Vendor and Vendee—Mortgaged Property—False Pretense—Probable Cause—Trials—Evidence—Questions for Jury.**

Where the defendant in a criminal action has three separate times been indicted upon as many charges in separate indictments alleged to have arisen from the defendant's having disposed of mortgaged property, in this case, a horse, and the defendant has been acquitted or found not guilty of all of the offenses charged against him, and brings his civil action for damages for malicious prosecution, introducing several affidavits and warrants in the criminal prosecution alleging false representations as to the encumbrances, which is denied by the defendant in this action, the prosecutor in the criminal one, with further evidence in his behalf that he was only acting as the agent of another in making the sale and was unaware of the existence of the mortgage: *Held*, the evidence as to probable cause is conflicting and leaves the question for the determination of the jury.

**5. Same—False Pretense—Intent to Deceive.**

The mere fact that a chattel sold to another was subject to the lien of a registered mortgage does not necessarily make the seller guilty of a false pretense in receiving the purchase money, for if he had acted as the agent of another in making the sale and was unaware of the existing lien

of mortgage. the elements of false pretense are lacking, *i. e.*, that the purchaser was knowingly and intentionally misled or caused to part with his money by a false representation of the seller.

6. **Malicious Prosecution—False Pretense—Debt—Enforcement of Collection —Evidence.**

The fact that the prosecutor in a criminal action had instituted it in order to compel the payment of a debt by the defendant is evidence of a malicious motive in an action brought by the defendant therein against the prosecutor to recover damages for malicious prosecution.

APPEAL by plaintiff from *Lyon, J.,* at November Term, 1914, of FOR-SYTH.

The plaintiff, as an employee of one W. H. Ziglar, traded a horse to the defendant, upon which it is alleged one W. N. Cundiff held a chattel mortgage, given by the man from whom Mr. Ziglar had purchased the horse. A civil action had been brought by the defendant against the plaintiff and others, and after the termination of this action the defendant, on 19 April, 1913, caused a warrant to be issued by P. V. Critcher, judge of the recorder's court at Lexington, N. C., charging the defendant with disposing of mortgaged property in that "he assisted, aided and abetted in the disposition and sale of the horse, knowing him to be mortgaged, with the intent to hinder, delay, and defraud the rights of the mortgagee," contrary to the provisions of section 3435 of the Revisal. Four days thereafter the plaintiff was arrested on this warrant by the sheriff of Forsyth County, and was held in bail in the sum of $200 for his appearance before the court at Lexington for trial on this charge. The trial was had on 17 May, 1913, and at the close of the evidence a *nol. pros.* was entered by the solicitor for the State, and the plaintiff was discharged. On the same day, and after his discharge on that warrant, another warrant was issued, at the request and upon the affidavit of the defendant, by said P. V. Critcher, judge of the recorder's court at Lexington, N. C., charging this plaintiff with the crime of false pretense, in that it was alleged that he had sold this horse to the defendant Sink knowing it was mortgaged, with intent to cheat and defraud him. The plaintiff was arrested on this warrant and held to bail in the sum of $250 for his appearance at the court in Lexington on 19 May, 1913. The trial was had on that date, and at the close of the evidence for the State a motion was made by counsel for the defendant that the warrant be quashed, which motion was granted, and the defendant again discharged. On the same day, and after his discharge, the defendant similarly obtained a third warrant charging this plaintiff with a false pretense in the sale of the horse and alleging substantially the same facts as in the second warrant. Upon this warrant the plaintiff was again arrested for the third time, on 27 June, 1913, and was required to give

bail in the sum of $200 for his appearance at the court in Lexington to answer this charge. There were several continuances of the case on account of the serious illness of the plaintiff, which necessitated his being confined in the hospital for many weeks, and finally it was tried on 8 October, 1914, when the plaintiff was adjudged "not guilty," and for the third time he was discharged. On the same day that he was discharged the last time he brought this suit for malicious prosecution. These facts were testified to by the plaintiff, and he also swore that he was not guilty of any of the offenses with which the defendant had him charged; he also offered evidence which tended to show that he was a man of good character; that he had been put to considerable expense in counsel fees and otherwise, in attending these trials, and that he had suffered humiliation and mental anguish on account of being charged by the defendant with the crimes set out in the warrants. He also offered in evidence certified copies of the warrants, with the judgments of the court thereon, and rested his case. The defendant moved to nonsuit for that, as he contended, the plaintiff had failed to show that the prosecution for these various offenses was either malicious or without probable cause. The court sustained the motion to nonsuit, and dismissed the action.

The only exception and the only assignment of error in the record is directed to the ruling on this motion, and to the order dismissing the action.

*Louis M. Swink for plaintiff.*
*No counsel for defendant.*

WALKER, J., after stating the case: There is sufficient evidence in this case for the jury upon the question of malice. The meaning of that word, as used in defining what is malicious prosecution, is not necessarily ill-will, anger, resentment, or a revengeful spirit, but simply a wrongful act knowingly and intentionally done the complaining party, without just cause or excuse. *Stanford v. Grocery Co.,* 143 N. C., 419; *Downing v. Stone,* 152 N. C., 525. It may be no more than the opposite of good faith. Hale on Torts, 354, says that "Any prosecution carried on knowingly, wantonly, or obstinately, or merely for the vexation of the person being prosecuted, is malicious. Every improper or sinister motive constitutes malice, in this sense." And Cooley on Torts, 338, says that "Legal malice is made out by showing that the proceeding was instituted from any improper or wrongful motive, and it is not essential that actual malevolence or a corrupt design be shown." *Holder v. Mfg. Co.,* 135 N. C., 392, and cases cited. If the object be to recover punitory or vindictive damages, particular or actual malice must be shown—something more than a mere injurious act committed without just or lawful ex-

cuse. *Stanford v. Grocery Co.,* 143 N. C., 419. The primary object of an action for damages is to recover compensation for the actual loss or injury sustained. The liability for punitive or exemplary damages, however, being for the purpose of punishment or as an example, rests primarily upon the question of motive; and the jury are not at liberty to go beyond the allowance of a compensation, unless it be shown that the act was done willfully, maliciously, or wantonly, or was the result of a reckless indifference to the rights of others, which is equivalent to an intentional injury; and when there is no proof that the injury was so inflicted, exemplary damages should not be allowed. Joyce on Damages, sec. 119; *Wood v. Bank,* 100 Va., 306; *Gilreath v. Allen,* 32 N. C., 67. The wrongful injury gives the right of action for compensation, and the malicious or wicked motive adds to it such other damages, sometimes called smart money, as the jury may reasonably award, as an example to others or in vindication of the law. *Holmes v. R. R.,* 94 N. C., 318; *Kelly v. Traction Co.,* 132 N. C., 369. This question is fully discussed in the above named cases, with a citation of the authorities, and further comment on this branch of the law is unnecessary. It is clear that within the principles stated there is evidence here of what may be called legal malice sufficient to sustain the action for compensation in damages, if not of express or actual malice. We, therefore, pass to the other points. There must not only be malice, but a want of probable cause, for both must concur and are essential to every suit for a malicious prosecution. Malice may be inferred by the jury from a want of probable cause; but the converse is not true, that a want of probable cause may be likewise inferred from malice. *Kelly v. Traction Co., supra;* Newell on Malicious Prosecution, p. 265, sec. 3; *Stewart v. Sonneborn,* 98 U. S., 187; *Sutton v. Johnstone,* 1 T. R., 493; *Foshay v. Ferguson,* 2 Denio (N. Y.), 617; *Murray v. Long,* 1 Wendell, 140; *Wood v. Weir,* 5 B. Mon. (Ky.), 514. It should be borne in mind, when passing upon the question of probable cause in such an action as this one that those facts and circumstances alone which were known to the prosecutor in the criminal action at the time he instituted the prosecution are to be considered in determining whether he had a probable cause for the course he pursued in respect thereto. It is not the innocence of the plaintiff in the civil action, defendant in the other, nor facts tending to prove the same, that bear upon this question, for, as *Judge Daniel* says in *Swain v. Stafford,* 25 N. C., 289, "The question of probable cause rested only on those facts and circumstances which were known to the prosecutor *at the time* he made his affidavit for the warrant." See, also, Newell, p. 265, note and cases; *Foshay v. Ferguson,* 2 Denio, 617; *Delega v. Highley,* 3 Bing. (N. C.), 950. In *Stacey v. Emery,* 97 U. S., 642 (24 L. Ed., at p. 1036), the Court said, quoting from *Justice Washington* in

*Munns v. Dupont,* 3 Wash., 37 : " 'If malice is proved, yet if probable cause exists, there is no liability. Malice and want of probable cause must both exist' to justify an action. He then defines probable cause in these words: 'A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged.' *Chief Justice Shaw* defines it in similar language: 'Such a state of facts as would lead a man of ordinary caution to believe or to entertain an honest and strong suspicion that the person is guilty.' *Ulmer v. Leland,* 1 Me., 135. In *Foshay v. Ferguson,* 2 Den., 617, the rule is laid down by *Chief Justice Bronson* in the same language, with this addition: .'And such cause will afford a defense to ·a malicious prosecution, however innocent the plaintiff may be.' In that case there was evidence to justify a finding that the prosecution had been from a bad motive. This rule is so clear that it is not necessary to multiply authorities." And in *Delega v. Highley,* 32 Eng. C. L., 398 (3 Bing. N. C., 950), which was an action brought for a malicious charge before a magistrate, the defendant pleaded that he had caused the charge to be made upon reasonable and probable cause, stating what the cause was. Upon special demurrer, the plea was held insufficient in not alleging that the defendant, at the time of the charge, had been informed of or knew the facts on which the charge was made. "If the defendant," said *Chief Justice Tindal,* "instead of relying on the plea of not guilty, elects to bring the facts before the court in a plea of justification, it is obvious that he must allege, as a ground of defense, that which is so important in proof under the plea of not guilty, viz., that the knowledge of certain facts and circumstances which were sufficient to make him or any reasonable person believe the truth of the charge which he instituted before the magistrate existed in his mind at the time the charge was laid, and was the reason and inducement of his putting the law in motion. Whereas it is quite consistent with the allegations in this plea that the charge was made upon some ground altogether independent of the existence of the facts stated in the plea, and that the defendant now endeavors to support the propriety of the charge, originally without cause, by facts and circumstances which have come to his knowledge for the first time since the charge was made." So, also, the converse of this doctrine is true: if a defendant prove that, at the time of the arrest, he had reasonable cause to believe the plaintiff guilty, this cannot be rebutted by proof that, afterwards, he turned out to be entirely innocent. *Foshay v. Ferguson,* 2· Den., 617. It may be important to inquire if the plaintiff was guilty of the offense charged against him, in the sense that if he was, there could be no malicious prosecution. *Galloway v. Stewart,* 49 Ind., 156 (19 Am. Rep., 677). But the authorities are generally agreed that if

he was innocent it can make no difference, where defendant acted upon the existence of such facts and circumstances as would constitute probable cause, and did not know of his innocence. Mr. Newell, in discussing this matter, says in his work on Malicious Prosecution at p. 252, secs. 1 and 2: "Reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. In order to maintain the action for malicious prosecution, it is very clear that the plaintiff must aver and prove that the suit complained of was commenced and prosecuted without reasonable or probable cause, and that it was malicious. The groundlessness of the suit may, in many instances, be so obvious and palpable that the existence of malice may be inferred from it. The question of probable cause applies to the nature of the suit; and the point of inquiry is, whether the defendant had probable cause to maintain the particular suit upon the existing facts known to him," citing *Wills v. Noyes,* 29 Mass., 324, opinion by *Chief Justice Shaw.* See *Jones v. Phelps,* 11 Ad. and El., 483, 489; *Foshay v. Ferguson, supra; Harpham v. Whitney,* 77 Ill., 32; *Bacon v. Towne,* 4 Cush. (58 Mass.), 217. The existence of probable cause does not, therefore, depend upon the plaintiff's actual guilt, for he may be ever so innocent, and yet if the defendant, in starting the prosecution, acted upon reasonable grounds and probable cause, he would not be liable even if he was inspired by malice and defendant was also innocent of the accusation.

Applying these principles to the facts of this case, we find that there is an issue of fact raised by the pleadings and conflict of testimony. Plaintiff introduced in evidence the several affidavits and warrants in the criminal prosecutions before the recorder of Lexington, in which it is alleged that he made the false representation to the defendant that there was no lien or encumbrance on the horse. This evidence was offered for the purpose of showing that he had been prosecuted by the defendant for the crime mentioned in the papers, and perhaps it should have been confined to that purpose; but not deciding that question, and conceding that it should have been considered as proof upon the question of plaintiff's actual guilt and as tending to show probable cause, the defendant, testifying in his own behalf, denied his guilt and stated that he did not know that the horse had been mortgaged and did not hear of it until after the sale; that he was acting as employee of Mr. Ziglar, who owned the horse, the mortgage having been made by a man from whom Ziglar had bought the horse. This evidence carried the case to the jury, and the nonsuit, under the statute, was improper. The questions raised

by this evidence were, whether the plaintiff had made the false representation with the intent to cheat defendant, and, if so, whether the defendant was deceived thereby. In order to constitute a false pretense, indictable under our statute, there must be "a false representation of a subsisting fact calculated to deceive, and which does deceive, and is intended to deceive, whether the representation be in writing, or in words, or in acts, by which one man obtains value from another without compensation." *S. v. Phifer,* 65 N. C., 321. The definition thus given in that case has been frequently approved by this Court in subsequent cases, to be found in the Annotated Edition of the Reports. If the defendant did not know of the mortgage, how could he have had an intent to deceive by a false representation in regard to it? and if he made no false representation about the mortgage, how could he be guilty of a false pretense, or how could the defendant have been deceived to his prejudice? The mere existence of the mortgage at the time of the sale did not make the latter a false pretense, unless the defendant was misled by something done or said by the plaintiff to his prejudice and which induced him to part with his money. If the false representation was intentionally made to deceive, and defendant was influenced thereby to part with his money, there was probable cause; but the defendant, appellant, is entitled to have the question submitted to the jury, with proper instructions as to the elements comprised in the offense of false pretense. In *Ross v. Langworthy,* 13 Neb., 492, which is somewhat like our case in its facts, the Court said: "Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused was guilty. *Boyd v. Cross,* 35 Md., 197; *Cooper v. Utterback,* 37 Ind., 282. The question of probable cause is one of law and fact composing two distinct inquiries. The one, for the jury to say what facts are proved, and it is for the court to say whether those facts constitute probable cause. *Turner v. O'Brien,* 5 Neb., 547-8; *Johns v. Marsh,* 9 Rep., 143; *Boyd v. Cross,* 35 Md., 194. Probable cause does not depend upon mere belief, however sincerely entertained; because if that were so, any citizen would be liable to arrest and imprisonment without redress, whenever any person, prompted by malice, saw fit to swear that he believed the accused was guilty of the offense charged. The law, therefore, has imposed an additional ground, viz., such knowledge of facts as would induce a reasonable man to believe that the accused was guilty. Nothing short of this will justify the institution of a criminal charge against another. Cooley on Torts, 182. The defendant's own testimony shows very clearly that the object he had in causing the plaintiff's imprisonment was to aid him in collecting his debt, and not to vindicate public justice. The rule of law is, that a prosecution instituted for any other purpose than that of

bringing the party to justice shows a malicious motive. *Johns v. Marsh,* 9 Rep., 143; *Mitchell v. Jenkins,* 5 B. and Ald., 594. The reason is, the prosecution was not instituted to vindicate the law and punish crime, but as a means of coercing the accused to comply with the wishes of the prosecutor."

If the plaintiff did not make the false representation, but was a mere agent of the owner, Mr. Ziglar, in making this sale, and knew nothing about the mortgage, we do not perceive how there could have been probable cause. If a man buys property which is subject to a lien, of which the seller is ignorant, and there is no deceitful misrepresentation as to the fact, and no fraudulent concealment of it, the buyer takes it at his own risk. He can protect himself by a warranty, and unless he is in some way deceived in regard to it, or otherwise taken advantage of or imposed upon, there is no criminal offense committed. The case should have gone to the jury, and at the next trial the defendant may be able to show by better proof that he had probable cause for what he did, or the plaintiff may acquit himself altogether of wrongdoing in the premises, and show that the defendant acted unreasonably and without probable cause. The evidence now is not very full, explicit, or satisfactory, but we cannot say that there is no evidence of plaintiff's cause of action.

New trial.