## JOHN T. JOHNS *vs.* JOHN MARSH.

*What is necessary to sustain an Action for Malicious Prosecution—Insufficiency of Prayers submitting the question of Malice and want of Probable Cause to the Jury—Province of Court and Jury—What constitutes Probable Cause—A prayer calling attention to and emphasizing certain facts, held Erroneous.*

In order to maintain the action for malicious prosecution, it is incumbent on the plaintiff to show that he had been prosecuted by or at the instigation of the defendant, and that such prosecution was instituted maliciously and without probable cause.

These ingredients are essential to the right of action, and if they are not found to co-exist, the action is not maintainable.

While the malice necessary to the right of recovery may not be deduced as a necessary legal conclusion from a mere act, irrespective of the motive with which the act was done, yet, any motive other than that of instituting the prosecution for the purpose of bringing the party to justice, is a malicious motive on the part of the person who acts under the influence of it.

In an action for malicious prosecution, the defendant prayed the Court to instruct the jury, that their verdict must be for the defendant, unless they should find that he was actuated by malice, and also that he acted without reasonable or probable cause in instituting the criminal proceeding against the plaintiff. HELD:

1st. That this prayer was too abstract in form to have enlightened the jury as to what constituted malice in the sense of that term as applied to said action.

2nd. That the prayer was also defective in submitting to the finding and conclusions of the jury, the question as to what did or did not amount to probable cause.

3rd. That while the jury are required to find whether the facts alleged in support of the presence or absence of probable cause, and the inferences to be derived therefrom, really exist, it is for the Court to determine whether upon the facts so found, there be probable cause, or the want of it.

Probable cause is made to depend upon knowledge of facts and circumstances which were sufficient to induce the defendant or any reasonable person to believe the truth of the accusation made against the plaintiff, and that such knowledge and belief existed in the mind of the defendant at the time the charge was made or being prosecuted, and were in good faith the reason and inducement for his putting the law in motion.

Mere belief that cause existed, however sincere that belief may have been is not sufficient.

Case where probable cause was held not to exist.

A prayer merely calling attention to and emphasizing certain items of evidence as tending to prove certain facts are liable to abuse and calculated to mislead the jury.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered nine prayers all of which were rejected and not inserted in the record except the following, which were conceded by the defendant:

7. If the jury shall find that the plaintiff was indicted, tried and acquitted in the Circuit Court for Baltimore County, on the charge set forth in the record of that Court, and the docket entries read in evidence, and shall find that the defendant, Johns, aided and assisted in procuring the arrest and prosecution of the plaintiff, by voluntarily appearing before the grand jury for the purpose of instigating the same, and aided and contributed to such prosecution in any way, under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution from public motives, then there was no probable cause for such prosecution, and the jury may infer, in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and their verdict may be for the plaintiff.

8. If the jury find for the plaintiff, the measure of damages is such an amount as they find will compensate the plaintiff for his actual outlay and expenses about his defence in the criminal trial, and for his loss of time, and for the injury to his feelings, person and character by his arrest and prosecution, by reason of the defendant's wrongful act, and may also award exemplary or punitive damages as a punishment to the defendant.

And the defendant offered the following prayers:

1. That the verdict must be for the defendant unless the jury shall find that the defendant was actuated by malice, and also that he acted without reasonable and probable cause in instituting the criminal charge against the plaintiff, which has been offered in evidence.

2. That if the jury shall find that the defendant was not actuated by malice in instituting said prosecution, then the verdict must be for the defendant.

3. That if the jury shall find that the defendant consulted counsel, and laid all the facts within his knowledge, or which by the exercise of reasonable diligence he could have ascertained, before said counsel, and that he was thereupon advised by said counsel, it was a proper case to be laid before the grand jury, those facts are evidence tending to prove the absence of malice on the part of the defendant.

4. That reasonable and probable cause means such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused was guilty of the crime imputed to him. And if they shall find in this cause that the defendant had such reasonable and probable cause for the accusation which was made against the plaintiff, then their verdict must be for the defendant.

5. That if the jury shall find that the defendant was present at the trial of the case of Louisa J. Marsh against the defendant, and that upon said trial he understood the

plaintiff to testify that the license to keep an ordinary in Carroll County in the year 1872, was issued in the name of Louisa J. Marsh, and not in the name of the plaintiff, and they shall further find that the defendant afterwards ascertained that the license was in the name of the plaintiff and not in the name of Louisa J. Marsh, and that acting upon a belief that the plaintiff had so sworn contrary to the fact, the defendant laid information of these facts before the grand jury, and also furnished them with the names of other witnesses who could testify that the plaintiff had sworn at said trial that the license was in the name of Louisa J. Marsh, then there was reasonable and probable cause for the defendant to lay said information before the grand jury, even though the jury may believe that in point of fact the plaintiff swore, or meant to be understood as swearing at said trial, that the license in question had been issued in his own name.

5½. That if the jury shall find that the defendant was present at the trial of the case of Louisa J. Marsh against the defendant, and that upon said trial he understood the plaintiff to testify that the license to keep an ordinary in Carroll County in the year 1872, was issued in the name of Louisa J. Marsh, and not in the name of the plaintiff, and they shall further find that the defendant afterwards ascertained that the license was in the name of the plaintiff, and not in the name of Louisa J. Marsh, and that acting upon the belief that the plaintiff had so sworn contrary to the fact, the defendant laid information of these facts before the grand jury, and also furnished them with the names of other witnesses who could testify that the plaintiff had sworn at said trial that the license was in the name of Louisa J. Marsh, then said facts, if believed by the jury, are evidence tending to prove the absence of malice on the part of the defendant, even though the jury may believe that in point of fact the plaintiff swore, or meant to be understood as swearing on said trial,

that the license in question had been issued · in his own name.

6. That if the jury shall find from the evidence in the cause, that the defendant appeared before the grand inquest of the State of Maryland, for the body of Baltimore County, and informed the said grand inquest that at the September term, 1874, of the Circuit Court for Baltimore County, during the trial in said Court of a case in which Louisa Jane Marsh, by her next friend, John Marsh, was plaintiff, and John T. Johns, was defendant, the plaintiff, (John Marsh,) had testified under oath that a certain license to keep an ordinary in the town of Manchester, in Carroll County, in the State of Maryland, from the 1st day of May, 1872, to the 1st day of May, 1873, had been issued to and in the name of Louisa Jane Marsh, and that he, the defendant, had been informed since said John Marsh, the plaintiff, had so testified, that in truth and in fact said license to keep an ordinary in the town of Manchester during said period had not been granted to and in the name of Louisa Jane Marsh, and that the defendant informed the grand inquest that he wished them to investigate the matter and see if there was anything wrong about it, and that when the defendant was asked by a member of said grand inquest, whether he wished them to see whether there had been any perjury, the defendant replied "yes;" that if in addition to the above facts, the jury shall find from the evidence in the cause, that at the time the defendant so appeared before the said grand inquest and requested them to make said investigation, he acted upon such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the fact that the plaintiff, John Marsh, had so testified, taken into connection with the truth as to the issuing of said license to keep an ordinary in said town of Manchester, from the 1st day of May, 1872, to the 1st day of May, 1873, was a proper sub-

ject to be investigated by said grand inquest, in order that they might see whether the crime of perjury had or had not been committed by said John Marsh, that then there was probable cause to justify the defendant's conduct, in connection with the alleged arrest and the alleged prosecution of the plaintiff, and their verdict must be for the defendant.

And the plaintiff objected to the defendant's first, third, fourth and sixth prayers, on the ground that there was no legally sufficient evidence in the case on which to base the same.

And he objected to defendant's first and fourth prayers on the ground that each put to the jury matter of law.

The Court (YELLOTT, J.) granted the plaintiff's seventh and eighth prayers which were conceded by the defendant, and overruled the defendant's first, second, fourth, fifth and fifth and a half prayers, and granted the defendant's third and sixth prayers. The defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*Henry V. D. Johns* and *Wm. M. Merrick,* for the appellant.

The law is uniform and characteristic of this action, that both malice and the want of probable cause must coexist before a recovery can be had, and that the law of that prayer is not embraced by any of the instructions which were granted. *Boyd vs. Cross,* 35 *Md.,* 194; *Medcalf vs. Brooklyn L. I. Co.,* 45 *Md.,* 198; *Stansbury vs. Fogle,* 37 *Md.,* 370–386.

The law is uniform that malice must be proved, and the rejection of the defendant's second prayer was in violation of that fundamental principle.

Johns vs. Marsh.

The Court erred in refusing the defendant's fifth prayer, because the facts embraced by its hypothesis, if found, would clearly make a case of probable cause in law.

As to the fifth and a half prayer, the facts therein recited would tend to repel the imputation of malice, and the defendant was entitled to have the benefit of the Court's instruction that those facts had a tendency to disprove malice, quite as well as the fact of the absence of probable cause tends to prove the existence of malice, as stated in the plaintiff's seventh prayer. *Mc Williams vs. Hoban*, 42 *Md.*, 65.

*John J. Yellott* and *Wm. P. Maulsby*, for the appellee.

The defendant's first, second and fourth prayers were properly rejected for various reasons.

1st. Because they were abstract propositions. *Newman vs. McComas*, 43 *Md.*, 70; *State vs. Deford*, 30 *Md.*, 179; 40 *Md.*, 212; *B. & O. R. R. Co. vs. Resley*, 14 *Md.*, 424.

2nd. They submitted to the jury matters of law. It is for the Court in these cases to say what particular facts constitute probable cause, and the province of the jury is limited to ascertaining the existence of these particular facts. *Newman vs. McComas*, 43 *Md.*, 70; *Boyd vs. Cross*, 35 *Md.*, 194; *Stansbury vs. Fogle*, 37 *Md.*, 370; *Mc Williams vs. Hoban*, 42 *Md.*, 56.

The question of malice in these cases is properly to be referred to the jury, but as the term has a different meaning in law and in common parlance, the jury should be instructed as to its legal meaning. The general character of the prayer made it misleading and capable of mischief. 1 *Am. Leading Cases*, 274; *Purcell vs. Mc-Namara*, 9 *East*, 361; *Stockley vs. Harnidge*, 8 *Carr. & Payne*, 11, (34 *E. C. L.*, 272.)

3rd. The fourth prayer was not only objectionable because improper in form and submitted to the jury matter of law, but the Court should have rejected it, because the

defendant received the full benefit of the proposition it contained in the plaintiff's conceded prayer, and in the defendant's sixth prayer, which was granted. It being fully embraced therein there was no error in its rejection. *Pettigrew vs. Barnum,* 11 *Md.,* 434; 40 *Md.,* 212.

The fifth and fifth and a half prayers are both most defective.

1st. They are not based upon the evidence in the cause, and should therefore have been rejected. *Maltby vs. N. W. Va. R. R. Co.,* 16 *Md.,* 422; *Cecil Bk. vs. Snively,* 23 *Md.,* 253 ; *Hurtt vs. Woodland,* 24 *Md.,* 393.

2nd. They are framed upon a forced construction of a portion of the defendant's testimony segregated from the rest, and entirely ignoring the testimony of the plaintiff. *Winner vs. Penniman,* 35 *Md.,* 163 ; *Md. Fertilizing Co. vs. Lorentz, &c.,* 44 *Md.,* 218.

There is no evidence in the cause whatever that Johns ever heard Marsh testify that the license was in his wife's name, but upon the contrary, he supposed that his silence gave consent, and in the latter part of his testimony, he swears positively that when the criminal cause was tried, he did not know what Marsh had sworn to about the license.

3rd. These prayers rest upon the *mere belief* of the defendant at the time, that Marsh had sworn contrary to the truth, without any regard to the *bona fides* and honesty of such belief. In a case of this kind, *mere belief* can avail the defendant nothing, unless it was honestly entertained and rested upon circumstances sufficiently strong in themselves to warrant a cautious and dispassionate man therein. Granting that Johns did hear Marsh testify as stated in the prayers, then it was for the jury to find whether, under all the circumstances surrounding the matter, a prudent and cautious man would have instigated the prosecution or gone before the Grand Jury; that feeling personally "aggrieved," he may have given credit to weak circum-

stances and a significance to the nod of a man's head, which no cautious man would have acted upon. 1 *Am. Leading Cases*, 266; *Walker vs. Turner*, 3 *G. & J.*, 377.

The defendant's fifth prayer enumerates several facts which are alleged to constitute probable cause; they are, in substance, that if the defendant *understood* the plaintiff to have testified to a certain fact, on the previous trial in question, and acting on that belief, instituted the prosecution against the plaintiff for perjury, such belief was probable cause, although the plaintiff had not, in fact, testified as the defendant had understood him to do.

This falls far below the definition of probable cause, omitting the *reasonableness* of ground of suspicion, the support of that reasonableness by *circumstances* sufficiently strong in themselves to have warranted a *cautious man* in believing that the plaintiff had committed perjury. *Straus vs. Young*, 36 *Md.*, 246; *B. & O. R. R. vs. State*, 36 *Md.*, 366; *Medcalf vs. Brooklyn L. I. Co.*, 45 *Md.*, 198.

The whole case was covered by the four instructions granted. The plaintiff's seventh prayer was the conceded law of the case. It imposed upon the plaintiff the burden of proving every necessary fact to sustain a case for malicious prosecution. The defendant's third prayer gave to him the full benefit of the supposed evidence, that he acted upon the advice of counsel. His sixth prayer, which was granted, placed the case fully and fairly before the jury upon the defendant's theory of the law and the facts involved. There having been a full and fair trial upon the law and the facts, there is no sufficient reason for a reversal of the Court below for any possible technical defect in its rulings. *Cooper vs. Utterbach*, 37 *Md.*, 282.

ALVEY, J., delivered the opinion of the Court.

This was an action for malicious prosecution, brought by the appellee against the appellant. The rulings of the Court below, to which errors are imputed, are those by

which five of the seven prayers offered by the defendant for instructions to the jury were overruled. The two instructions given at the instance of the plaintiff were conceded by the defendant, and they, together with the third and sixth prayers granted on the part of the defendant, constituted all the instructions that were given to the jury. And, upon examination, it would appear that the defendant obtained, in the instructions thus given, the full benefit of all the principles of law that he could in reason ask to have applied to the case.

By the first of the prayers rejected, of those offered by the defendant, the Court was asked to say to the jury that their verdict must be for the defendant, unless they should find that the defendant was actuated by malice, and also that he acted without reasonable and probable cause, in instituting the criminal proceeding against the plaintiff. Now, however correct in principle this proposition may be, in its abstract form, and as offered in this prayer, it could hardly have been a safe guide for the jury. It is doubtless true, and not at all controverted by the plaintiff, that, in order to maintain the action, it was incumbent on the plaintiff to show that he had been prosecuted by or at the instigation of the defendant, and that such prosecution was instituted maliciously, and without probable cause. These ingredients were essential to the right of action, and if they were not found to co-exist the action was not maintainable. And while the malice necessary to the right of recovery may not be deduced as a necessary legal conclusion from a mere act, irrespective of the motive with which the act was done, yet, any motive other than that of instituting the prosecution for the purpose of bringing the party to justice, is a malicious motive on the part of the person who acts under the influence of it. As was accurately stated by Mr. Justice PARKE, afterwards Baron PARKE, in the case of *Mitchell vs. Jenkins*, 5 *B. & Ad.*, 594, " the term ' malice,' in this form of action, is not

to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives." If, for example, a prosecution is initiated upon weak and unsubstantial ground for purposes of annoyance, or of frightening and coercing the party prosecuted into the settlement of a demand, the surrender of goods, or for the accomplishment of any other object, aside from the apparent object of the prosecution and the vindication of public justice, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of being actuated by malice. Such motives are indirect and improper, and for the gratification of which the criminal law should not be made the instrument. *Add. on Torts, pp.* 594, 613 ; 2 *Greenl. Ev., sec.* 453. Taking then the term "malice" in the sense as here explained, it is quite obvious the prayer of the defendant was too abstract in form, and would not have enlightened the jury as to what constituted malice in the sense of that term as applied to this action ; but the jury would have been at liberty to adopt their own notion as to the extent and meaning of the term. Without any instruction at all upon the subject, explaining the sense in which the term should be applied, the jury would most likely take it in its popular and restricted sense of personal enmity, and desire of revenge. Of this, however, the defendant could not complain. But the prayer is defective in another particular. It required the jury to find, as a condition upon which they could render a verdict for the plaintiff, that the defendant had acted without reasonable and probable cause in instituting the criminal proceeding. Now, while it is perfectly well settled, that if there be reasonable or probable cause, to the knowledge and honest belief of the defendant, no malice, however flagrant or distinctly proved, will make the defendant liable, yet the question as to what does or does not amount to probable cause is not one to be

submitted to the finding and conclusions of the jury. That question is one compounded of law and fact; and while the jury are required to find whether the facts alleged in support of the presence or absence of probable cause, and the inferences to be drawn therefrom, really exist, it is for the Court to determine whether, upon the facts so found, there be probable cause or the want of it. *Boyd vs. Cross,* 35 *Md.,* 194; *Cooper vs. Utterbach,* 37 *Md.,* 283, 317; *Stansbury vs. Fogle,* 37 *Md.,* 386; 1 *Tayl. Ev., p.* 40, and cases there cited. In view of this well established principle, the prayer was properly rejected, even if it had been free from all other objections.

Then, as to the second prayer of the defendant, also rejected. What has been said in considering the first prayer, in respect to the question of malice, equally applies to this. By this prayer, the Court was requested to instruct the jury, that if they should find that the defendant was not actuated by malice in instituting the prosecution, their verdict should be for him. This result was provided for in the prayer offered by the plaintiff, which was conceded by the defendant, and upon which there is and can be no question raised on this appeal. By that prayer, the jury were instructed that it was competent for them to infer malice from the want of probable cause as therein defined, if the existence of malice was not negatived by the proof before them; and it was only in the event of finding the existence of malice, that the verdict could be found for the plaintiff according to the instruction. There was, therefore, no occasion for the instruction asked for by the second prayer, unless it had furnished the jury with an explanation of the sense in which the term "malice" should have been applied. But that, as we have seen, it failed to do.

It being conceded that the defendant got the full benefit of his fourth prayer, which was rejected, in his sixth prayer, which was granted, a reversal is not claimed, nor

could it be, for any supposed error in rejecting the fourth prayer. And passing over the fourth prayer, we come to the fifth, which was also rejected. This prayer presented the question as to what facts, if found by the jury, would constitute probable cause. By this prayer, the Court was asked to instruct the jury, that if they found that the defendant understood the plaintiff to swear contrary to the fact in regard to the license, and, acting upon that belief, he laid the charge before the grand jury, that those facts constituted probable cause, notwithstanding such belief was founded wholly in misapprehension or mistake in point of fact. The Court below was certainly right in declining to affirm this proposition.

Probable cause, according to the definition adopted by this Court, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing that the accused was guilty. *Boyd vs. Cross,* 35 *Md.,* 197; *Cooper vs. Utterbach,* 37 *Md.,* 282, 318. It is very true, probable cause does not depend on the actual state of the case, in point of fact, as it may turn out upon legal investigation. It is made to depend upon knowledge of facts and circumstances which were sufficient to induce the defendant, or any reasonable person, to believe the truth of the accusation made against the plaintiff, and that such knowledge and belief existed in the mind of the defendant at the time the charge was made or being prosecuted, and were, in good faith, the reason and inducement for his putting the law in motion. *Delegal vs. Highley,* 3 *Bing. N. C.,* 950; *McWilliams vs. Hoban,* 42 *Md.,* 57; 2 *Greenl. Ev., sec.* 455. Mere belief that cause existed, however sincere that belief may have been, is not sufficient; for, as said by Judge COOLEY, one may believe on suspicion and suspect without cause, or his belief may proceed from some mental peculiarity of his own; there must be such grounds of belief, founded upon the actual knowledge of facts, as would

influence the mind of a reasonable person, and nothing short of this can justify a serious and formal criminal charge against another. *Cooley on Torts*, 182. The defendant here was the defendant in the cause in which it was supposed the plaintiff had committed perjury. He was present in Court and heard the testimony, and he was therefore not liable to be misled or imposed upon by any mere report of what occurred. As witness for himself in this case he has stated what he understood the plaintiff's testimony to have been on the occasion referred to. He says "that when the plaintiff was called as a witness he stated that he was carrying on business as agent for his wife; that Mr. McIntosh, the counsel, then said, 'then the license is in your wife's name;' and that Marsh made no reply, but bowed his head, and he, defendant, supposed that silence gave consent; that Marsh did not deny that the license was in his wife's name, and that he, defendant, paid no more attention to what was said, and thinks he has given the substance of Marsh's testimony." Having himself heard this testimony, assuming that he is correct in his recollection of it, it was not, to say the least of it, a charitable construction, and one that a discreet, careful man would readily adopt, to conclude, on learning that the license was not in the name of the wife, that Marsh had committed wilful and corrupt perjury. But if we assume, as the prayer does, that Marsh, the plaintiff, swore, or meant to be understood as swearing, at the trial referred to, that the license in question had been issued in his own name, and not that of his wife, there is no ground whatever for saying that there was probable cause to the knowledge and belief of the defendant. Even if there were circumstances of suspicion in the mind of the defendant which might have been readily removed or explained, by reasonable and proper inquiry, and there was no inquiry made, such circumstances cannot be made the ground for showing the exist-

ence of probable cause.  *Perryman vs. Lister, L. Rep.*, 3
*Exch.*, 197, *Exch.  Ch.; S. C.*, 4 *L. Rep., H. L.*, 521;  *Add.
on Torts*, 592.   However confident or strong  therefore the
belief of the defendant may have been  in regard to the
existence of  probable cause for the  prosecution, if that
belief was induced  by his own negligence, or  from error
or mistake as to  the real  state of  the  facts, without just
cause of suspicion furnished  by the plaintiff, the proof of
probable cause  must fail.   *Merriam vs. Mitchell,* 13 *Me.*,
439; 1 *Am.  L.  Cas.*, (*3rd  Ed.*,) 221; 2 *Greenl. Ev., sec.*
455.   The  prayer proceeds upon  the concession that  the
defendant, in initiating the prosecution against the plain-
tiff, acted upon a mistake or misapprehension of the facts,
and that the real fact was the reverse of  what the defend-
ant represented it to be.   It is insisted, however, inasmuch
as the defendant at the time believed in  the truth of the
state of case as  he  presented it, it  therefore  constituted
probable cause.    But, in regard  to such  proposition, both
reason and authority are conclusive against the defendant.

   The  prayer No.  $5\frac{1}{2}$ contains  the  same enumeration  of
facts as  prayer No. 5, and  asked that the Court would
instruct the  jury, that  those facts, if  believed, were evi-
dence *tending* to prove the absence of  malice  on the part
of  the defendant, even though it might be found that  the
plaintiff swore that the license had been taken out in  his
own name, and not that of his wife.

   Prayers of  this character, merely calling  attention to
and emphasizing  certain items of proof as *tending* to prove
certain facts,  have been  repeatedly condemned  by this
Court as being liable to abuse, and  as  calculated  to  mis-
lead  the  jury.   The Court in  ruling the evidence admis-
sible, on a general offer, allows  it  to  be  considered and
weighed for all the legitimate purposes of  the  case ; and
its force and bearing as  means of  proving or disproving
any particular fact in  contest is  exclusively for the  jury.
If a prayer of this character could be entertained in respect

to one fact or circumstance, it could be in respect to any other in the case, down to the remotest and the most minute; and if in respect to circumstances in support of any particular fact, it would be proper so to instruct in respect to all opposing or adverse facts and circumstances. This would lead to manifest abuse. The refusal of such prayers was approved by this Court in the cases of *Hurtt vs. Woodland,* 24 *Md.,* 394, and *Mason vs. Poulson,* 40 *Md.,* 355, and we can see no good reason why we should depart from the rule of practice thus sanctioned.

Upon the whole, we find nothing in any of the rulings appealed from that requires a reversal, and we must therefore affirm the judgment.

*Judgment affirmed.*

(Decided 15th July, 1879.)