Mr. Justice Hagner
delivered the opinion of the court.
This is an action for malicious prosecution and imprisonment. The declaration states, with the usual averments of evil motive, that the defendant sued out a warrant against the plaintiff on the 9th of February, 1878, upon the charge of having stolen a lot of copper pipe, and caused him to be arrested and imprisoned ; that the charge was false and groundless, and that the prosecution was dismissed and wholly ended before this suit was brought, and the plaintiff claimed $10,000 damages.
On the same day a similar declaration was filed in case No. 19,883, which was brought by William Neil, the brother' of Coleman, against the same defendant.
The general issue was pleaded in both cases and by agreement they were tried together before a jury, which rendered a verdict for $50 in Neil’s case, and returned a verdict for the defendant in the ease at bar.
Neil’s case is not before us ; but the case of Coleman is here upon a number of exceptions to various rulings of the judge at the trial below. Several of these relate to the rejection and admission of evidence ; others to the rejections-of prayers offered by the plaintiff; and exception is also-taken to certain designated portions of the judge’s charge to-the jury.

jFirst, third and sixth exceptions.

The points presented by the first, third and sixth exceptions are so nearly the same, that they can be more conveniently considered together.
It appears from the first exception, that after the justice of the peace, Taylor, had testified on behalf of the plaintiffs that he had issued the warrant upon the application of the defendant, and had produced the several- paper and docket *191 entries relating to the case, he was asked on cross-examination by defendant’s counsel: “Hid you not tell him (the defendant) at the time, that it was proper for him to swear out this warrant?” To this question the plaintiff’s counsel objected “because the same was not proper testimony upon the issue joined, and because it does not relate to anything that was brought out on the examination-in-chief.” The objection was overruled, and the witness answered “I did.”
The third exception shows that officer Sturgis, a member of the police force, testified in behalf of the plaintiff, to the circumstances connected with the arrest; and upon cross-examination he was asked “if he did not advise Heurich that he was justified under the circumstances in swearing out a warrant for the arrest of the said plaintiff'.” To this question the plaintiff’s counsel objected, upon the grounds urged to the similar question propounded to the justice on cross-examination ; and the objection having been overruled, the witness answered that he told Heurich “ that the information they had received would justify him in getting a warrant.”
In the further progress of the case, the defendant was examined as a witness in his own behalf, and stated that after certain communications with the officers, he went to the justice of the peace, Taylor, “and told him all the circumstances, and he told him he was justified in suing out the warrant; ” and to this conversation between the defendant and the justice, the plaintiff objected, and the objection was overruled and the testimony admitted ; and this alleged error is the subject of the sixth exception.
The evident design of the counsel in thesé offers was to support the contention that the defendant was not liable for the prosecution since he had acted under the advice of the magistrate and policeman in suing out the warrant.
In our opinion the evidence was not admissible. Although a party may defend himself in this form of action by proof that before he took steps to procure the arrest he consulted with counsel learned in the law, and laid before him a full and fair statement of the facts, as they were then known to *192 Mm, and - sued out the warrant under Ms advice, yet the authorities show no case where a similar exoneration has been allowed because the party acted under the advice of a magistrate, officer or other layman. Stewart vs. Young, 36 Md., 266. This was very clearly stated afterwards in the eighth instruction granted by the court at the request of the plaintiff, and also in the charge to the jury on page 36 of the printed record.
The questions set out in the first and third exceptions were liable to the additional objection that the matters therein referred to were not so connected with the subject brought out on the examination-in-chief as to authorize the defendant to make them the subject of cross-examination. If the inquiry had been a proper one, it could only have been pursued by the defendant by making the witness his own, and recalling him at the appropriate stage of the trial.
Second exception. The error alleged in this exception was the admission, upon cross-examination of officer Sturgis, of the defendant’s declaration at the Police Court as to his indisposition to prosecute the plaintiffs because they were married men, and further that the defendant applied to the district attorney to nol pros, the case.
The latter part of this statement was substantially given afterwards by the defendant in his examination-in-chief, and went to the jury without objection ; and therefore the plaintiff cannot be supposed to have been injured by its admission on the cross-examination of Sturgis. Still we think the entire offer inadmissible, since Heurich could not properly offer such declarations post litem, motam in his own exculpation.
The admission of such evidence would be in conflict with the cardinal maxim of the law, which prohibits a party’s acts or declarations to be given in evidence in his own behalf. Crawford’s adm’r vs Beall, 21 Md., 233.
Fourth exception. We are also of the opinion that -the plaintiff was entitled, in the manner claimed in the fourth exception, “ to prove that prior to his arrest he was a man of good character and reputation in the community in which *193 he resided, and that the defendant knew this, as tending to prove the want of probable cause.” The offer was couched in the very words of the decision in the case of Blizzard vs. Hays, 46 Indiana, 166, cited in note 3 to section 454 of 2d Greenl. on Ev., and seems to be supported by the opinion of the court in Barron vs. Mason, 31 Vermont, 180, and also by a case in 23 Ills.
The statement in the text of 2d G-reenleaf, section 458, relied upon by defendant’s counsel as controverting this position, plainly refers to the right of the defendant to offer evidence of the bad character of the plaintiff in the first instance. The judge’s instruction that “ these men stand in the position of innocence in regard to the offence with which ihey are ■charged,” and “ that there is no inference to be drawn against their character on account of that criminal accusation made against them, and subsequently withdrawn,” seems to be too restricted a statement of their right to be presented before the jury as men of good character, in general, as well as with respect to this accusation ; and we think they were certainly entitled to show that this important fact in their favor was known to the defendant when he sued out the warrant.
Fifth exception. The fact stated by the witness Steeps, on cross-examination, that the defendant’s wife furnished the “collateral,” the deposit of which procured the release of the plaintiffs from imprisonment, was testified to afterwards by the defendant himself, as appears from the statement in the seventh exception, with circumstances of greater detail, altogether without objection on the part of the plaintiff, and hence the ruling of the court on this exception, if incorrect, could not properly be examined here.
Seventh exception. The plaintiff’ insists that the court erred in permitting the defendant to testify, on his examination-in-chief, “ that he was not actuated by any malice or ill-will in instituting or carrying on the prosecution.”
In our opinion the court’s ruling on this offer was correct.
The objection urged by the plaintiff’s counsel, that the allowance of such evidence would sanction the admission of *194 testimony, Which in its nature it would be impossible to contradict, would equally exclude the denial of evil intent by a prisoner when examined in a criminal case. But the competency of such evidence in this class of eases cannot be doubted ; although its admission by the court, by no means insures its adoption by the jury as true. It is well settled that a party who becomes a witness, becomes so for all purposes unless the statute limits his capacity, and may testify to his own mental processes, such as knowledge and intent, as well as to other facts. Wheldon vs. Wilson, 44 Maine, 1; Lawton vs. Chase, 108 Mass., 241.
In Flickinger vs. Wagner, 46 Md., 600, which was an action for malicious prosecutions, the defendant was asked by his counsel: What was your motive in making the charge of perjury against the plaintiff' ? ” And answered “ that his motive was justice to himself and to society.” The court of appeal held that the question and answer were admissible, and said: “ The motive which operated upon and induced the defendant to have the plaintiff arrested on the charge of perjury, was directly involved in the issues before the jury, and being a competent witness under the evidence act, the defendant had the right to'explain to the jury the motive under which he acted.”
The eighth exception involves the propriety of the refusal by the court to grant five of the thirteen prayers offered by the plaintiff, the remaining eight having been granted.
Th & fifth prayer asked the court to say, “ if the jury believe from the evidence that the facts and circumstances within the knowledge of the defendant were sufficient to induce a reasonably prudent man to believe that the coat referred to in the testimony was the coat of the plaintiff’, Coleman, that does not in itself constitute a reasonable ground of suspicion strong enough to warrant a cautious man in instituting a criminal prosecution.”
In this prayer the plaintiff undertook to select from the mass of evidence in the cause an isolated circumstance, and required the court to express to the jury an opinion as to its probative force, separated from every other fact proved in *195 the case. In the language of the court of appeals, in the case of Johns vs. Marsh, 52 Md., 337, “ if a prayer of this •character could be entertained in respect to one fact or circumstance, it could be with respect to any other in the case, down to the remotest and the most minute ; and if in respect to circumstances in support of any particular fact, it would be proper so to instruct in respect to all opposing or adverse facts or circumstances. This would lead to manifest abuse.” See also Newham vs. McComas, 43 Md., 78.
Nothing could be more plainly calculated to mislead a jury than to grant such instructions. Their effect would be to deprive each individual fact of the just support it should receive from its correlation with co-existing facts, by presenting them separately, and seeking the aid of the court to belittle the importance of each particular circumstance seriatim.
In Stansbury vs. Fogle, 37 Md., 387, the court, speaking of such a prayer, says : “ But when a court has to deal with such a case after the evidence is all in, it would be highly improper to allow a part of the testimony, disconnected from all the other conceded facts and circumstances in the case, to be selected as the hypothesis, and upon that alone- to declare there was probable cause for the prosecution, and thus defeat the action. Such a course would in many instances defeat the ends of justice.”
Inadmissible as such a practice would be if repeated prayers presented successively all the facts in turn, it appears still more objectionable where a few only of the number are thus brought into a prominence calculated to dwarf those not thus presented, and which by this method the jury is almost invited to ignore.
The court was right in refusing to give an instruction based upon so partial and imperfect a presentation of the facts bearing upon the question of probable cause. Of. the same character was the ninth prayer of the plaintiffs which required the court to say that if the jury should find that the police officers arrested the plaintiff before the defendant sued out the warrant, this did not constitute any reasonable *196 or probable cause or justification -whatever for the prosecution.
In our opinion this instruction also was properly refused.
The seventh prayer is predicated of the supposed right of the defendant “ to assail the character and reputation ” of the plaintiff, and asks the court to instruct the jury that in consequence of the defendant’s failure to do so, the presumption of the plaintiff’s good character aud reputation “ became absolute in the case.” But we are not prepared to admit that a defendant, as of course, has the right in an action for malicious prosecution, “to assail the character and reputation of the plaintiff,” except in reply to affirmative evidence on the point already offered by the plaintiff. On the contrary it is expressly laid down in 1 Greenl. Ev., § 55, that evidence of the plaintiff’s bad character is not received in trespass on the case for malicious prosecution. And the same author in see. 458, vol. 2, states the matter thus: “Ordinarily, the character of the plaintiff is not in issue in this action. But in one case, where the charge was larceny, the defendant was allowed, in addition to the circumstances of suspicion, which were sufficient to justify his taking the plaintiff into custody, to prove that he was a man of notoriously bad character.”
The position assumed in the prayer goes much beyond the decision in the exceptional case quoted by the author, and would amount to an assertion that the general character and reputation of a plaintiff may always be attacked in such an action, without reference to the nature of the charge, whether it be of theft or murder, or unchastity or forgery, and in the absence of evidence of good character already offered by the plaintiff This would be too greatly at variance with the genera] principles on the subject of evidence of character to receive our sanction.
As the prayer contained this error, it was properly rejected.
The tenth and thirteenth prayers present definitions of malice, abstract in form, and quite unnecessary, if correct, in view of the ample declarations on the subject already set *197 forth in the plaintiff’s fourth, eleventh and twelfth prayers, which were subsequently enforced by the charge of the court. It would be error in the trial court to multiply instructions unnecessarily, and thus mislead and embarrass the jury rather than assist them ; and the practice of announcing abstract propositions of law, in the words of the definitions from text books, or of adjudged cases, which may be multiplied indefinitely, is a most objectionable form of this error, universally condemned by the appellate courts. Further, the tenth prayer would have worked an injustice if it had been granted, since it states that “malice, in law, means an act done wrongfully and without reasonable or probable cause,” whereas it is plain that a prosecution may have been instituted maliciously, notwithstanding the existence of probable cause.
The thirteenth proposition, that “ malice may be inferred from undue activity and zeal displayed,” is as abstract a proposition as would be a definition of virtue or vice. It assumes that there was proof of such zeal and activity on the part of some one, not named ; and leaves to the jury the determination of what might or might not justly be considered an “undue” amount of these qualities. The court might equally have been asked to say that an absence of malice might be inferred from’great “zeal and activity displayed,” for such would be as fair an inference if the zeal and activity had been displayed in releasing the prisoner.
The prayers were property rejected.
The Judge’s Charge. — The next error complained of is the statement of the judge to the jury in his charge in these' words : “ Now I am going to leave the question of probable cause and of malice entirely open for the decision of the jury upon the circumstances of the case.” The plaintiff contends that it was the duty of the judge, of his own motion, in the absence of special request to do so, to point out the facts testified to, bearing upon the question of probable cause, and to instruct the jury that those facts, if found by them, did or did not constitute probable cause.
The authorities relied on in support of this contention *198 place the reason for the rule upon the anomalous nature of the inquiry, which in form is a negative averment made in the declaration and requiring some proof to be adduced in its support by the plaintiff; and also upon the intrinsic perplexity and difficulty of the question, which for that reason may always more properly be dealt with by the court. On the other hand it is insisted that there should be nothing special in the treatment of this class of cases by the court ; and that, particularly where there is a decided conflict in the testimony, the whole inquiry should be left to the jury for their determination. The question seems to be by no means free from difficulty, on the words of the authorities, though that difficulty appears to have arisen largely from the want of exactness in the expressions employed in stating the rule.
Thus in 2 Greenl., § 454, the author, after stating that the facts material to this question are first to be found by the jury, and the judge is then to decide, as a point of law, whether the facts so found establish probable cause or not, says : “ But if the matter of fact and matter of law, of which the probable cause consists, are intimately blended together, the judge wall be warranted in leaving the question to the jury’’ This last sentence would appear at first to justify the ruling of the judge below in the case at bar, but, in my opinion such is not the meaning intended to be conveyed by the author.
We understand the law, in actions for malicious prosecutions, to be well settled, that where the defence of probable cause involves undisputed facts ; as where the defendant in'his plea justifies his action as having been taken in performance of duty, as by an officer uuder command, or by a sheriff executing the mandate of a competent court, and it is not disputed that the proof establishes the truth of the facts so pleaded — the judge, without leaving the examination of the facts to the jury, should, as a mattor of course, declare his opinion whether the facts referred to constitute probable cause in law, or do not.
Such action of the judge would be in accordance with the *199 universal practice of the courts where numbers of questions compounded of law and facts are presented in the course of a trial, which must be wholly decided by the judge : as, for instance, the proper construction or proper execution of writings; the competency of witnesses ; whether a confession offered in evidence should be excluded because of previous threats or promises ; whether there has been sufficient proof of loss of an original paper, and of search for it, to justify the introduction of secondary evidence, of its contents; whether a communication is to be protected as confidential; &c., &c. In each of these cases there may be serious questions of disputed fact to be determined upon examination of witnesses, but such evidence, however extended and conflicting, is solely for the courts, and is never submitted to the jury; and the decision of the judge is based upon the credibility of the facts as well as the law.
But the inquiry arose whether the same rule should prevail where the facts were numerous and the evidence greatly conflicting, and closely blended with the principles of law governing the question of probable cause ; and the language is intended as a negative reply to this inquiry, and a declaration cited from Greenleaf assumes that in such cases the court would depart from this strict practice, and would leave to the jury to decide upon the facts ; advising them that as they should find the facts one way or the other, so the legal question of the existence of probable cause would stand. But we find no warrant in reason or authority for the position that the judge is authorised to submit the whole matter to the jury to determine for themselves the questions of law as well as of fact. “
And when it is remembered that the defendant in this form of action is held to be fully justified if it appears he made the arrest upon the advice of counsel learned in the law that there existed probable cause for his action, while the amplest proof that he acted upon the advice of laymen, however intelligent, is held to be entirely immaterial, it would seem to be a strange inconsistency to leave the determination of the same question, at the trial to a jury of lay *200 men, instead of again leaving its decision to one learned in the law — the judge on the bench.
Again ', if there is any point that may be raised in such a trial, that each party might reasonably wish to submit to an appellate court, it would be the question whether the act complained of, was one of wrong and oppression, or was one of duty justified by the surrounding facts. And yet, if the jury is authorised to decide this complicated and difficult inquiry, its 'decision upon the legal questions involved would be final and beyond re-examination.
The correct position, as I conceive it to be, is sustained by the best considered authorities. Thus, in 1 Taylor on Evidence, § 26, the author, who has been discussing the duty of the judge to instruct the jury upon certain subjects, proceeds as follows :
“ First. It is now clearly established — albeit the wisdom of the rule has recently been stoutly disputed — that the question of probable cause must be decided exclusively by the judge, and that the jury can only be permitted to find whether the facts alleged in support of the presence or absence of probability and the inferences to be drawn therefrom, really exist. For instance, in an action for malicious prosecution, the jury, provided the evidence on the subject be conflicting, may be asked whether or not the defendant, at the time when he prosecuted, knew of the existence of those circumstances which tend to show probable cause, or believed that they amounted to the offence which he charged ; and if they negative either of these facts, the judge will decide, as a point of law, that the defendant had no probable cause for instituting the prosecution ; and this rule — which is based on the assumption that judges are far more competent than juries to determine the question how far it may have been proper for a person to have instituted a prosecution —is equally binding, however numerous and complicated the facts and inferences may be.”
In a note to this section, the author quotes the decision of Tindal, Ch. J., in the case of Panton vs. Williams, 2 Q. B., 192, as follows: “Upon the bill of exceptions we take the *201 broad question between the parties to be this, whether in a case in which the question of reasonable or probable cause depends, not upon a few simple facts, but upon facts which are numerous and complicated, and upon inferences to be drawn therefrom, it is the duty of the judge to inform the jury, that if they find the facts proved and the infer enees to be warranted by such facts, the same do or do not amount to reasonable or probable cause ; so as thereby to leave the question of fact to the jury, and the abstract question of law to the judge, and we are all of opinion that it is the duty of the judge so to do.”
This doctrine, so firmly established in England, is equally well settled here in jurisdictions entitled to our entire respect. In Maryland it has never been the practice to charge the jury in civil cases, except in response to specific prayers for instructions. But this established practice is departed from by the courts there in actions for malicious prosecution. A reference to some of the later decisions of the appellate court of that Sate will fully sustain this 'assertion.
Thus, in the case of Boyd vs. Cross, 35 Maryland, 197, the court says: “The want of probable cause is a mixed question of law and fact. As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury ; but what will amount to the want of probable cause in any case is a question of law for the court. The jury in our practice are always instructed hypothetically as to what constitutes probable cause, or the want of it, leaving to them to find the facts embraced in the hypothesis.”
This language is quoted “ totidem verbis ” in Cooper vs. Utterbach, 37 Md., 317, and in the same volume, at page 386, in the case of Stansbury vs. Eogle, the court says : “ It is now the established doctrine, both in this country and in England, that what facts and circumstances amount to probable cause is a question of law, but whether these facts and circumstances exist in the particular case is for the jury. In this State the jury are instructed hypothetically, as to what constitutes probable cause, leaving it to them to find the facts embraced in the hypothesis.”
*202 In Medcalfe vs. The Brooklyn Ins. Co., 45 Md., 205, the court quotes the same sentence, and says : “ This course was not adopted in the present ease. The appellant prayed the court to instruct the jury that the question whether the defendant had probable cause for instituting the criminal proceedings against him, was one to be decided by the jury upon all the evidence in the case. * * * The appellant's prayer submitted to the jury a question of law, and was therefore improper.”
And In the recent case of Johns vs. March, 52 Md., 333, the court says : “ Now, while it is perfectly well settled that if there be reasonable or probable cause to the knowledge and honest belief of the defendant, no malice, however flagrant or distinctly proved, will make the defendant liable, yet the question as to what does or does not amount to probable cause is not one to be submitted to the findings and conclusions of a jury. That question is one compouded of law and facts ; and while the jury are required to find whether the facts alleged in supqiort of the presence of absence of probable cause, and the inferences to be drawn therefrom, really exist, it is for the court to determine whether upon the facts so found, there be probable cause or the want of it. In view of this well-established principle, the qirayer was qiroperly rejected, even if it had been free from all other objection.”
Such a course would be especially proper in this jurisdiction, where the judges always charge the jury irrespective of the instructions asked.
For these reasons we think there was error in this part of the judge’s charge.
It is further objected that the judge erred in his ruling, in these words : “But in this case it appears that the arrest was made and the officers who made the arrest have been examined as witnesses, and I have concluded to'instruct you not to be bound by the advice which they gave the defendant in this action ; but at the same time you may consider it as a circumstance going to show probable cause for the prosecution, that they had examined the facts of the case. It, I *203 think, may be properly submitted, to the intelligence of the jury, in coming to a conclusion whether the defendant had probable cause for the institution of that criminal proceeding.” The judge had in the eighth instruction granted on the plaintiff’s application, told the jury in the most explicit terms that the advice of the officers was not evidence tending to show the existence of probable cause, nor does it. in any manner justify the prosecution by the defendant, and the jury should give it no weight or consideration in their deliberations.” And in the sentence in the charge immediately preceding that complained of, he had repeated that the advice of the officers “is do justification whatever.”
It is scarcely conceivable that the learned judge intended in the very next sentence to unsay what he had thus twice so positively stated, and we do not think the words are fairly susceptible of this construction. He evidently meant to tell the jury that the fact of the antecedent arrest by the officers (persons employed to trace out crimes and arrest those appearing to be guilty) was a circumstance to be considered under the head of probable cause ; and in this statement he was undoubtedly correct, and if the court had stated to the jury how far the facts, to be found by them supported this defence, it would certainly have called attention to the fact that the defendant’s oath had been made after the plaintiff had been taken in custody by the policemen. But if the counsel for the plaintiff feared that the jury might have been misled by the alleged inconsistency of the language with the previous utterances of the court, they should have called the judge’s attention to the point after the delivery of the charge, when the difficulty could readily have been removed.
The exception to that part of the judge’s charge, in which he used the expression that “ good faith requires that he should make some examination,” &c., discloses no error. It is very apparent that this casual expression in the midst of a long charge, could not have been understood by the jury as annulling all the foregoing instructions in the prayers and charges, inculcating the necessity of great caution on the *204 part of the prosecutor before suing out the warrant. See particularly the sixth prayer of the plaiutiff granted by the court.
It remains to inquire whether the errors we have found in the record are of such a character as to require us to send the case back for a new trial.
The evidence as to the advice given by the justice and officer, which forms the subject of the first, third and sixth exceptions, was afterwards withdrawn from the jury by the most explicit instructions, and could not possibly be considered as having been before the jury when it retired for consultation. Its admission is, therefore, no ground for reversal.
We have stated that the judge below erred in leaving to the jury the determination of the question of probable cause and that it was his duty to have decided that matter himself, and announced his opinion upon the sufficiency of the evidence to establish the existence or non-existence of this all-important feature in the case.
If he had thus announced his opinion he would inevitably have told the jury that the facts did not sustain the averment of the declaration that the complaint was made and the arrest and imprisonment effected by the defendant, “ without any reasonable or probable cause.” The judge did not give such an instruction, but it is well settled that the ■appellate court may examine the record and ascertain for itself whether the case (conceding the testimony bearing on the subject to be true) is sufficient in law to sustain this indispensable averment, and if it finds, applying the words of the court in 45 Md., 206, that the appellant’s evidence failed in its first and most essential feature — the absence of probable cause for the prosecution — to declare that it was legally impossible the suit could be sustained.
In our opinion there was such a failure in the case at bar.
It appears from the uncontested evidence that, on the 8th of February, 1878, Heurich, the defendant, was the proprietor of a brewery in this city, and that Neil and the plaintiff, *205 two colored men, who were half-brothers, were employed as workmen there ; that on the night of that day a lot of copper pipe was stolen from the premises ; that on the morning of the next day an officer came to Heurich and asked him whether he had missed any copper pipe ; that he said he had missed some, and the officer stated they had some at the station house, and on accompanying the officer to that place he was shown the pipe and bag in which it was contained, and recognized both as his property. That he was there told that the bag and its contents had been found near his brewery the night before, and that near by was found a brown coat, which his nephew and others recognized as the coat of Coleman, the plaintiff. That in the pockets of the coat were found a piece of dog’s chain, which Heurich recognized as belonging to him, and a piece of candle of the description used in the brewery ; that there was some felt on one of the sleeves, and the coat smelt of beer ; that he w’as told Coleman had worn that coat to the depot in company -with one of the employees when they went there to fetch some felt to the brewery, and had assisted in unloading the felt; that the copper pipe had been stored in a cooper’s shop on the premises which was kept locked at night, but was open by day, and that Coleman and Neil had assisted in putting the pipe in the cooper’s shop ; that there was a fierce dog within the brewery enclosure; that Heurich found the officers had already arrested the plaintiff’ and Neil on suspicion of having committed the larceny, and had them confined at the station house ; that he saw Coleman and Neil and thought their looks were suspicious. And that he thereupon made the affidavit and sued out the warrant, which was served on the plaintiff and Neil, who were held until the next day, when they were released upon bail furnished by Heurich’s wife on his direction.
We are all of the opinion that these facts, shown to have been presented to Heurich at the time he made the affidavit, were sufficiently strong and clear to repel the charge that he instituted the prosecution “ without any reasonable or probable cause.” The defendant’s act is to be estimated with *206 respect to the state of affairs then presented to him, and it seems impossible to contend that these circumstances were not sufficient to have constituted a reasonable ground of suspicion in the mind of a cautious man, that the accused was actually guilty of the specific offense charged against him. As is said by Justice Washington (in the case of Munns vs. Dupont, 3 Wash. C. C. R.), public officei’s in conducting prosecutions must .proceed “ in most instances upon the information of individuals ; and if these actions are too much encouraged, if the informer acts upon his own responsibility and is bound to make good his charges at all events, under the penalty of responding in damages to the accused, few will be found bold enough, at so great a risk, to endeavor to promote the public good.”
Every escape of evil-doers from prosecution is a fresh incentive to further misdeeds. In the words of the court in Boyd vs. Cross, 35 Md., 200, in a similar though less suspicious case, “ investigation was certainly proper, and the placing the plaintiff in the hands of the officers of the law was the only course by which full investigation was likely to be had.”
The ruling of the judge below, however, in thus leaving the question of probable cause to the jury, was altogether favorable to the plaintiff’, since it placed it in the power of the jury to decide that the facts showed an absence of probable cause, while if the court had assumed the decision of the question, it certainly must have decided that those facts plainly showed its existence. The ruling, therefore, could have worked no injury to the plaintiff, and constitutes no ground for reversal.
This view of the case is in accordance with the decision of the court in Nicholson vs. State, reported in 38 Md., 154. In the trial of three parties for murder, the State offered in evidence the confession of Nicholson, one of the prisoners, made to a detective. The prisoner’s counsel objected to its admission on the ground that it had been obtained by promise of immunity, and the detective, and the prisoner’s brother, Thomas, who was present at the confession, testi *207 fied before the court on the subject. The examination was protracted and the evidence extremely contradictory, and the court, recognizing the difficulty of a satisfactory decision, admitted the confession, and instructed the jury that they should give credence to it, or reject it, accordingly as they believed the statement of the detective, or that of the prisoner’s brother.
The court of appeals decided that this was error, as the entire inquiry, including the question of the credibility of the witnesses, should have been determined by the court, and could not be delegated to the jury ; but it refused to reverse the judgment, and said the point was no longer material in the case, “ as we are all of the opinion that the confession was admissible, and proper evidence, the ruling of the circuit court on that question must be affirmed. The only effect of the instruction given to the jury was to afford the prisoner’s counsel an opportunity of arguing before them that the testimony of Thomas Nicholson was entitled to their belief, and consequently that the confession of the prisoner ought to be discarded from their consideration. The appellant was therefore not injured by the course pursued by the court in this respect, and cannot be entitled to a reversal for that cause.” See Walbrun vs. Babbitt, 16 Wall., 577; Greenleaf vs. Birth, 5 Peters, 132.
The errors presented by the second and fourth bills of exceptions also become unimportant in this view of the case.
If the court had ruled out the evidence of Sturgis’ conversation with Heurich at the Police Court, as stated in the second exception, instead of admitting it, our decision would remain unchanged.
That interview took place on the Monday following the arrest on Saturday, and could only have been applied by way of reflecting Heurich’s antecedent motive when the arrest was made, which wbukl relate to the question of malice, and not of probable cause.
So, if the court had admitted the evidence of the plaintiff’s good character, as set forth in the fourth exception, the proper decision of the inquiry as to probable cause, in *208 our opinion, should have been as we have already indicated.
The question properly for Tleurich’s decision before he sued out the warrant, was whether there existed, to his apprehension, after due examination, reasonable ground of suspicion, founded upon the facts and circumstances, to justify him as a cautious man in handing over the suspected person to the public authorities. And it seems clear to us that a man of ordinary mind and caution, upon the presentation of such an array of facts, would have been fully justified in suing out the warrant, notwithstanding he was aware that up to that time the previous character and reputation of the accused had been good. Precious as is a good name, it cannot be endowed with such supreme potency as to place its fortunate possessor bejmnd inquiry in the presence of circumstances of strong suspicion supported by a connected train of facts, vouched for by men of equally fair repute. Tf such were to be the rule, the crowd of defaulting treasurers and bank officers of previously unquestioned reputation would enjoy still greater facilities for escaping with their plunder.
The same common sense that should compel a prosecutor to give due weight to the good character of the accused, would also instruct him that a good reputation is often undeserved. Lord Holt’s familiar apothegm is but the echo of common human experience : “A man is not born a knave ; there must be a time to make him so ; nor is he presently discovered, after he becomes one.”
Upon the whole case we cannot bring ourselves to question that the plaintiff received substantial justice at the trial. Upon the same evidence, taking out the application to him of the proof of the ownership of the coat, Neil recovered a small verdict. That additional circumstance proved against Coleman may well have turned the scale against him ; and we are not surprised that such was the result.
The importance of the various questions so well presented by the counsel has led us into the fullest examination, which has satisfied us that the judgment below should stand.